# BAUER v. UNION CENTRAL LIFE INSURANCE COMPANY.

### (133 N. W. 988.)

**Corporations —service of summons on "managing agent."**

> *Held*, under the facts, that the purported agent upon whom service of summons was made, in an attempt to make service thereby upon the appellant, was not a "managing agent" of defendant insurance company, and such attempted service was void, and judgment ordered thereon vacated.

Opinion filed December 11, 1911. Rehearing denied January 6, 1912.

Appeal from District Court, Ramsey county; *Cowan*, J.

Action by Albert R. Bauer against the Union Central Life Insurance company. Judgment for plaintiff, and defendant appeals.

Reversed, and action dismissed.

*Murphy & Duggan*, for appellant.

*W. M. Anderson*, for respondent.

Goss, J. This is an appeal by the defendant from an order denying its motion to vacate a default judgment, procured after service of summons upon one M. F. Murphy, as its managing agent. No substantial conflict appears in the facts offered in support of the motion to

Note.—The general question of service of process on managing agent of foreign corporation is considered in a note in 23 L.R.A. 496. And the question who is a managing agent of a foreign corporation for purposes of service of process is the subject of a note in 4 L.R.A. (N.S.) 460.

vacate. The question to be determined is whether Murphy, at the time of service, was a managing agent of the insurance company (defendant), within the contemplation of our statute.

The motion was made upon the grounds that the service of summons was not made upon any officer or agent of defendant company upon whom, under the law, service of summons could be made. The affidavits and exhibits presented on this question disclosed the actual relationship between Murphy and the company. Murphy is a resident of Grand Forks, engaged in the real estate and loan business. Defendant company is a foreign corporation, created to carry on the life insurance business. It has appointed the insurance commissioner of this state, as provided by law, its agent for the service of process upon it in the state of North Dakota. It makes investments in real estate loans in portions of this state and in Minnesota, and for its convenience in doing so has a contract with Murphy. This establishes the scope of the agency existing between them. It consists of an agreement whereby the defendant, on May, 1909, appointed Murphy as its "financial correspondent to solicit and procure applications for loans" exclusively for it, upon certain terms, whereby the loans were limited, security described, and particular requirements provided for as to terms of the loans, privilege of payments, rates of interest to be exacted, the obtaining of insurance policies and abstracts of title, limiting special privileges to be granted to borrowers, the supplies to be furnished by the company, and the territory designated from which loans would be accepted; that security upon which loans were made should be examined and approved by Murphy; that he should draft all mortgages, notes, and other papers upon forms provided him by defendant, have them properly executed, recorded, and abstracts continued; and that Murphy should disburse the proceeds of the loans under authority to be obtained of mortgagors. Murphy was to collect all delinquent interest and taxes, and "to render such personal service upon the general business of party of the first part [defendant] without compensation as may be reasonably requested." He also agreed "to accept said appointment as financial correspondent, and faithfully perform, to the best of his ability, all and singular the obligations imposed upon him by this contract." Defendant reserved the right to suspend or abrogate the provisions of the agreement at any time Murphy's conduct of its affairs

were not satisfactory to it, but, unless abrogated, the contract continued in force for one year. It further stipulated that the ownership of all books, correspondence, checks, drafts, papers, and documents held by Murphy in connection with the business was the property of the company, to be delivered upon demand, and that Murphy should incur no expense in the making of loans, except his commissions provided under the contract; and that he should have "no authority to waive obligations, alter forms or blanks in any respect, or represent the party of the first part in any particular, except as herein set forth. The loan rates to be taken and the commissions to Murphy are provided for in detail as to each county in which loan operations were to be had, and as "additional expense" it was agreed that Murphy should be paid, "upon his request, $400 per month as expenses, provided not less than $480,-000 of loans are closed during the year; the proportionate amount of this advance to be returned to the parties of the first part [defendant] by the party of of the second part [Murphy] if less than $480,000 loans are closed during the year."

Accompanying this contract exhibited is the affidavit of the treasurer of defendant company, reciting that the business of the corporation is writing life insurance, and that the investment of its accumulations in mortgages is but an incident of its principal business; that Murphy is not the president, secretary, cashier, treasurer, director, managing agent, or officer of said corporation, but that he is "a financial correspondent of said company, and in such capacity is authorized to submit to said corporation applications for loans to be secured by first mortgages upon real estate in certain counties of North Dakota; that if said applications are approved, said Murphy makes said loans with his own funds and upon his own credit, and said corporation agrees, after said loans have been made, to purchase them at some future time" with the surplus funds as they accumulate and need investment; "that Murphy is not authorized to, and does not in fact, solicit insurance for said corporation, and he is not authorized in any way to bind said corporation, or to transact its business for it in its behalf; that his only connection with said corporation is in the capacity of financial correspondent," as heretofore stated.

From the stationery upon which there is correspondence in evidence touching this matter, in which Murphy questions the sufficiency of the

service made upon him in a letter to plaintiff's attorney, there appears, as the letter head, the names of the treasurer and assistant treasurer and president of the company, and the words: "Financial Department, the Union Central Life Insurance Company. Office of M. F. Murphy, Financial Secretary, Grand Forks, N. D."

The foregoing constitutes the facts upon which the sufficiency of the service made is to be determined as a matter of law. The service was had under the following provision of statute: Service of summons may be had by delivering a copy thereof "if the defendant is a foreign corporation, joint stock company, or association, to the secretary of state, unless the defendant is an insurance company, in which case to the commissioner of insurance, or to the president, secretary, cashier, treasurer, a director or *managing agent thereof, if within the state, doing business for the defendant.*"

The decisions on this question are many. Most states have a similar statute; some, however, as Minnesota, omit the word "managing;" and others, as California, supplement it by the words "or business agent;" others, as New York, have a counterpart of our statute. The tendency of recent decisions is toward sustaining service, and recent decisions sustain, where early ones hold against, the sufficiency of service. It would seem that the nature of the business is also considered in determining service questions; the courts going to greater extremes to uphold service made upon a foreign corporation necessarily having a fixed situs or channel of business within the state, and from its nature necessarily in charge of and controlled by some agent who must necessarily manage, to a greater or less extent, such business. Of this the railroad business is an illustration, regarding which service may be had under the same statute by serving (as held in Brown v. Chicago, M. & St. P. R. Co. 12 N. D. 61, 102 Am. St. Rep. 564, 95 N. W. 153), the summons upon any regular station agent within the state; such agent being held, from the necessity arising from the nature of the business transacted by him, to be a managing agent, within the meaning of this statute. In other instances, it depends upon the actual relationship existing between the agent and the principal, in determining whether the agent in each instance is a managing agent. The cases agree that an ordinary employee or servant is not a managing agent.

The contract between the appellant and Murphy, its financial cor-

respondent, very carefully limits the company's liability and responsibilities in every particular. The discretion delegated to Murphy pertains only to such matters as it would be impossible for the appellant otherwise to supervise or direct, such as examining and approving security. No discretion is granted him in the making of loans in terms, rates, or privileges, other than this approval of the land upon which they are to be placed; and the manner of performance is carefully outlined, and he held to that specified in the contract, with a broad reservation of authority and stipulation against his ability to bind the company. It further appears that after Murphy's approval of securities appellant's approval is necessary, and thereafter Murphy advances his own money, closes the loans, continues the abstracts, and, in fact, is the real owner of the mortgages subsequently negotiated until appellant accepts them and pays for them according to its previous approval had. It is true a great volume of business is contemplated by the contract, but this cannot change the stipulated method of its performance, any more than the nature of the business done, nor enlarge the scope of the agency as between the agent and principal, Murphy and appellant. Nor does the provision in the contract that Murphy shall "render such personal service upon the general business of the party of the first part without compensation as may be reasonably requested," in view of the fact that it is part only of a contract so definite in terms, and in which Murphy's powers are so limited, to any extent affect the situation. Construed with the entire contract, it would do violence to the intent of the parties, as it would to the rules for construction of contracts, to say that under this provision any appreciable addition of authority was conferred upon Murphy. It is noticeable that, whatever such personal service shall be, it is only as such as "may be reasonably requested," so that again the defendant company makes its request as a condition precedent to any extension of authority on Murphy's part.

"The term [managing agent] is evidently intended to include only such an agent as has charge and management of the ordinary business of the corporation within the particular locality, and who is vested with general powers, involving the exercise of judgment and discretion, in the management of the ordinary business transacted, at least within that locality." 32 Cyc. 551. One of the leading and well-considered cases (Federal Betterment Co. v. Reeves, 73 Kan. 107, 4 L.R.A.(N.S.)

460, 84 Pac. 560), following with approval Reddington v. Mariposa Land & Min. Co. 19 Hun, 405, says: "It is quite clear that the legislature attached importance to the term 'managing agent,' and employed it to distinguish a person who should be invested with general power, involving the exercise of judgment and discretion, from an ordinary agent or employee who acts in an inferior capacity, and under the direction and control of superior authority, both in regard to the extent of the work and the manner of executing the same. The distinction thus attempted to be drawn we deem reasonable and in harmony with the obvious purpose of the statute in regard to the service of process upon a foreign corporation." Not that it is necessary, in order to bind the company, that Murphy should have been an agent for general purposes, or agent to handle the general business of the company. Russell v. Washington L. Ins. Co. 62 Misc. 403, 115 N. Y. Supp. 950, from which we quote: "The statute does not mean that the whole business of the corporation shall be in charge of the agent to constitute him a managing agent. 'Every object of the service is attained when the agent served is of sufficient character and rank to make it reasonably certain that the defendant will be apprised of the service made."

Is this agency such as would, under these rules, reasonably warrant the conclusion that Murphy is a managing agent for the defendant? Can we say, in the light of the facts of this case, that a reasonable certainty exists that, in an action brought against defendant company to recover on a life insurance policy, with service made therein upon this agent, the agency is of such "sufficient character and rank to make it reasonably certain that the defendant will be apprised of such service?" Where is the evidence of any duty, express or implied, of this agent to inform his principal of this suit brought? Does the limited agency shown to exist measure up to what we can reasonably infer the legislature meant by the term "managing agent?" Not every agency answers thereto, or the word "managing" would not have been used in defining the relationship required. And could an agency exist with much less discretion left in the agent than that here shown? His duties are also, like his discretion, limited to and defined by his contract. Aside from the volume of business contemplated (whether performed or not does not appear), this agency rises but little above an employment. If this service be sustained as answering the statutory requirement, as be-

ing made upon a managing agent of a foreign corporation, every limited agency will suffice. Due process of law contemplates legal service prior to judgment. While unreasonable obstacles should not, by strained construction of the statute, be placed in the way of obtaining jurisdiction of foreign corporations, the reasonable safeguard of their business affairs required that the agent served have sufficient interest in the corporate affairs to owe it a duty of acquainting it of suit so brought against it. To require less might result in confiscation of property under guise of law. Recognizing this, legislative wisdom has defined the degree of agency required to bind the principal by service, and exacted that such agent be a "managing agent," or service be made upon the commissioner of insurance. See authorities cited in 12 Century Dig. § 2611; 5 Decen. Dig., under Corporations, § 507; 32 Cyc. 551, 552, notes and annotations; notes in 4 L.R.A. (N.S.) 460, and 23 L.R.A. (N.S.) 496.

We are constrained to hold that Murphy was not the managing agent of the defendant. It is ordered that the judgment of the District Court be reversed, and the same is vacated and annulled, and this action dismissed for want of jurisdiction of the defendant company.