# WILLIAM KLUVER, Appellant, v. MIDDLEWEST GRAIN COMPANY, a Corporation, and H. T. Hogy, Respondents.

(173 N. W. 468.)

**Foreign corporations — service upon — doing business in state.**

1. A foreign corporation is amenable to process to enforce a personal liability, in the absence of consent, only if it is doing business within the state in such manner and to such extent as to warrant the inference that it is present there, and has subjected itself to the jurisdiction and laws of such state.

**Foreign corporations — process — statute — officers.**

2. Where it is sought to make service upon a foreign corporation by delivering process to one of the officers or representatives enumerated in subdivision 5, of § 7426, Comp. Laws 1913, such service is ineffectual unless the person served at the time of such service was "within the state, doing business" for such corporation. And where it is sought to make service upon a foreign corporation under subdivision 6, of said section, the service is not binding upon the corporation unless the person served at the time of service was "found within this state acting as the agent of, or doing business for, such corporation."

**Corporations — foreign corporations — process.**

3. Service of process on a person who has ceased to represent a foreign corporation either as its agent or officer prior to the bringing of the suit is not service upon such corporation.

**Summons — motion to set aside service of summons — reopening case — vacation of order.**

4. Where a motion is made to set aside the service of a summons, the court has power to reopen the hearing after it has announced its intention to deny the motion. It also has power to vacate an order denying the motion and to entertain a second motion to set aside such service.

---

NOTE.—For authorities discussing the question of validity of service of process against foreign corporation on resident officer, see note in L.R.A.1916E, 244.

The question as to whether or not soliciting business within the state, by a foreign corporation through its agents, was doing business in the state, within the scope and meaning of statutes authorizing service of process against a foreign corporation doing business within the state, is discussed in notes in 9 L.R.A. (N.S.) 1214; 23 L.R.A. (N.S.) 834; and L.R.A.1916E, 236, on soliciting trade by foreign corporation as doing business within the state.

On jurisdiction over foreign corporation generally, see note in 85 Am. St. Rep. 905.

**Failure of service — special appearance.**

5. An appearance for the sole purpose of objecting to the jurisdiction of the court over a foreign corporation on the ground that the person upon whom service has been made was not authorized to receive such service is a special appearance only, and does not waive the want of service of process.

Opinion filed May 3, 1919.

From an order of the District Court of Ward County, *Leighton* J., plaintiff appeals.

Affirmed.

*W. H. Sibbald,* for appellant.

In passing upon a question of jurisdiction it is not within the province of the court to consider whether the allegations of the complaint are true. A plea in abatement will lie only where there are facts not appearing of record which defeat the jurisdiction of the court in the particular case, but where the facts giving jurisdiction appear of record no plea in abatement will lie. 1 C. J. 33 (18), 35 (26); 14 Cyc. 434; 40 Cyc. 110.

The truth of the allegation that a corporation is doing business within the state is a question for the jury. Oakland Sugar Mill Co. v. Wolf Co. 55 C. C. A. 93, 118 Fed. 239.

Where a foreigner buys property in a state it will be held to be doing business in such state on the ground that each state has control of property within its borders. L.R.A.1916E, 236, note; 23 L.R.A. (N.S.) 834, note; Pennsylvania Lumberman's Mut. F. Ins. Co. v. Meyer, 197 U. S. 405, 49 L. ed. 810; Atkinson v. United States Operating Co. (Minn.) 152 N. W. 410.

A party is not permitted to divide up his objections or claims for relief by several motions where complete relief can be granted upon one and all known objections or claims for relief against the same irregularities not urged by the first motion are waived. 19 R. C. L. 667; 1 C. J. 274 and cases cited therein; Bonesteel v. Orvis, 23 Wis. 506, 99 Am. Dec. 201; 32 Cyc. 528.

Service on any agent, or at least on the only one who is found in the state, is sufficient as against a foreign corporation which has failed

to comply with a statute requiring it to establish an office and appoint an agent on whom service may be made. Hagerman v. Empire Slate Co. 97 Pa. 534; Ehrman v. Teutonia Ins. Co. 1 McCrary, 123; Moch v. Virginia Ins. Co. 10 Fed. 696; Clews v. Rockford, R. I. & St. L. R. 49 How. Pr. 117; Mutual Reserve Fund Life Asso. v. Phelps,. 190 U. S. 147, 47 L. ed. 987; Davis v. K. & T. Coal Co. 129 Fed. 149; Groel v. United Electric Co. 69 N. J. Eq. 397, 60 Atl. 822. And to like effect see extensive note in 30 L.R.A.(N.S.) 680; 19 Cyc. 1346.

*Fisk & Murphy,* for respondents.

The sheriff's return that service was made upon a party as president and managing agent of a corporation is merely prima facie evidence of the matters recited concerning relation of party to the corporation. Great Western Min. Co. v. Mining Co. 12 Colo. 46, 13 Am. St. Rep. 204, 20 Pac. 771; Hays v. Alway, 166 N. W. 139.

CHRISTIANSON Ch. J. The complaint alleges that the defendant, Middlewest Grain Company, is a foreign corporation; that the defendant W. H. Hogy, was a licensed warehouseman, owning and operating an elevator at Burlington in this state, and engaged in buying or shipping grain for profit at said place of business; that between August 1, 1915, and July 1, 1916, the plaintiff stored in said elevator 333⅓ bushels of wheat, for which wheat the said Hogy issued storage receipts in form and substance as prescribed by law; that thereafter the defendant, Middlewest Grain Company, with the knowledge, consent and connivance of said Hogy, took and converted to its own use 333⅓ bushels of the same kind and quality of grain set forth in the storage receipts held by the plaintiff, not leaving sufficient grain in said elevator to cover the outstanding storage receipts which had been so issued to said plaintiff; that plaintiff's storage receipts are outstanding and unpaid; that plaintiff has tendered a return of said storage tickets to said Hogy and demanded of him a return of the grain stored, or a like quantity of the same kind and quality of grain, and that such demand was refused; that plaintiff has also demanded of the defendant, Middlewest Grain Company, the possession of the said grain, and that such demand was refused.

On February 2, 1918, the sheriff of Ward county served the sum-

mons and complaint upon one Jourgen Olson. The service was made in Ward county, in this state. In his return the sheriff certified that he had made service upon "the defendant, Middlewest Grain Company, a corporation, by handing to and leaving with Jourgen Olson, the president and managing agent of the above-named corporation, a true and correct copy" of said summons and complaint. The defendant objected to the jurisdiction of the court and so appearing moved that the attempted service of the summons be set aside. The basis of the motion is stated as follows in the affidavit of Jourgen Olson, which was submitted in support of said motion, viz.: "That the summons and complaint in the above-entitled action was served upon him (Jourgen Olson) at the city of Minot, North Dakota, on the 3d day of February, 1918; and affiant further states that he was not at said time within the state acting as agent for or doing business for and in behalf of the said Middlewest Grain Company, a corporation; that the Middlewest Grain Company is a corporation organized under the laws of the state of Minnesota, and that its office and place of business is at the city of Minneapolis and state of Minnesota, and that all of its business is conducted at said office; that this affiant lives in the city of Minot and has an office therein and is engaged in the land, loan, and real estate business, and, as above stated, was not acting as agent for nor doing business for the Middlewest Grain Company at the time of the said service."

In opposition to said affidavit of Jourgen Olson the plaintiff submitted the affidavit of plaintiff's attorney. Such affidavit set forth the sheriff's return, and averred that said Olson then was and at all times since the incorporation of the Middlewest Grain Company had been its president; that said Olson is a resident of Ward county, North Dakota, and at all the times mentioned in the complaint was and still is the managing agent, and in reality the manager, of said corporation, directing the major operations thereof from his office in Minot. The motion to set aside the service came on for hearing upon these two affidavits. Plaintiff states in his brief on this appeal: "At the time the motion came on for hearing plaintiff's counsel pointed out that even if the allegations denying the agency were true still Olson was admitted to be the president of the corporation, and as the cause of

action arose in this state the service was good. The trial court took the position that, in addition to showing that Olson was president, there must be a showing that Olson was doing business in the state for the corporation. The matter was accordingly postponed to enable plaintiff to make such showing."

Later the plaintiff filed the affidavit of his attorney, and the affidavit of one Fleckton. The affidavit of plaintiff's attorney is to the effect that on June 1, 1916, said Jourgen Olson procured from one H. T. Hogy, a chattel mortgage, running from said Hogy to said Middlewest Grain Company, to secure the sum of $13,608.24; that on April 4, 1916, said Olson secured from one W. J. Evans a chattel mortgage (running to said Middlewest Grain Company) on an elevator at Niobe, North Dakota, to secure the payment of $6,500. The affidavit of Fleckton is to the effect that he is the manager of the Niobe Elevator Company, and as such handles its correspondence; that among other letters received by said company since March, 1916, are certain letters apparently written by said Jourgen Olson, in behalf of the said Middlewest Grain Company, from Minot, North Dakota; "that during the year 1916, said Niobe Farmers' Elevator Company shipped grain to said Middlewest Grain Company, at Minneapolis, and that during the spring of 1917, affiant with other officers of the Niobe Farmers' Elevator Company, went to Minot, North Dakota . . . to the office of said Jourgen Olson, in Minot, and there arranged for the shipment of grain to said Middlewest Grain Company;" that said Jourgen Olson made the arrangements leading up to, and represented the Middlewest Grain Company at the time of, the giving of "such security." The letters referred to in Fleckton's affidavit are attached to and made a part of his affidavit. The first three letters are written upon the letterheads of Jourgen Olson & Company of Minot, North Dakota, and signed by Jourgen Olson. There is a printed statement at the top of the letterhead, relating to the Jourgen Olson & Company, to the effect that Jourgen Olson & Company has a capital of $500,000; that it offers "banks and the investing public choice first farm mortgages, also short-time paper maturing six months to one year;" and that it has *"money to loan to banks on their certificates of deposit at all times and to all classes of business men for six months to one year."*

The first letter bears date, March 22, 1917. It states that a certain note and mortgage are inclosed and gives directions for their execution. Inquiry is made as to whether the grain business of the Niobe Elevator Company may not be had. The letter further states: "We are able to finance you to your entire satisfaction on the same basis as any one else can, and no better. . . . We do not know if you have your supplies from the Middlewest Grain Company, but if not, there is plenty of time to send them." It is further suggested that a draft may be drawn on the Middlewest Grain Company for an amount sufficient to enable the Niobe Elevator Company to pay off the balance it may be owing to any commission company with which it was then doing business. The second letter bears date, September 25, 1917. The body of the letter reads:

"As I wrote you some time ago from Minneapolis in reference to the shipment of grain to the Middlewest Grain Company and as it was our understanding that in consideration of carrying your notes on your elevator that in that event you would ship your grain to the Middlewest Grain Company and if for any reason it was not handled satisfactorily then in that event you would pay us the notes.

"Up to the present time we do not seem to have received one car, and for that reason we cannot help but feel that you are doing business at other places, and if the case is that you were not satisfied with our business we prefer to have you pay up the $5,000 we carry on you."

The third letter bears date, September 29, 1917. It refers to the outstanding note of the Niobe Elevator Company, and the understanding with which it was taken. The fourth letter is written upon the letterhead of the Middlewest Grain Company. It is dated, Minneapolis, Minnesota, December 31, 1917. It makes reference to another letter, said to have been written from Minot. It further refers to some indebtedness of the Niobe Elevator Company to Wyman Company, and, also, to a certain carload of flax. The fifth letter bears date, February 2, 1918. It is written upon the letterhead of Jourgen Olson & Company, and signed by Jourgen Olson. The first two paragraphs in the letter read:

"We acknowledge receipt of your check for $225 which we have applied on your $5,000 note.

"Now in reference to oats, barley, and feed, I suggest that you write direct to the Middlewest Grain Company of Minneapolis and of course they can give you any and all information that you want as I do not know very much about that."

The remainder of the letter relates to some grain which apparently the Niobe Farmers' Elevator Company desires to purchase in Canada. Reference is also made to the $5,000 loan and the desire to have all the shipments from the Niobe Elevator Company during the coming year, if the latter company is given the financial aid it needs in operating its elevator.

Upon the filing of these two affidavits, the trial court apparently announced its intention to deny the motion, but the record contains no written order to that effect. Thereafter the defendant submitted to the court the affidavits of Jourgen Olson, Louis Enger, and N. J. Thorson. The court thereupon issued an order citing plaintiff to show cause why the former announcement should not be revoked, and the service of the summons set aside. The affidavit of Jourgen Olson is to the effect that on January 1, 1918, he sold and transferred all of his interest in the Western Grain Company to one N. J. Thorson; that since the date of said transfer said Olson has been and is wholly without authority to represent or act for the said Western Grain Company in any capacity whatsoever. The affidavit further states that the $5,000 note of the Niobe Elevator Company, which was originally given in 1916, is and always "has been owned by and in the possession of this affiant, Jourgen Olson, and was never the property of the Middlewest Grain Company, the defendant corporation, and that affiant personally advanced the $5,000 to the said Niobe Farmers' Elevator Company." The affidavit further states that the letter to the Niobe Elevator Company, dated February 2, 1918, "was written in behalf of Jourgen Olson & Company, and not in behalf of the Middlewest Grain Company." The affidavit of N. J. Thorson is to the effect that he is the president of the Middlewest Grain Company; that on January 1, 1918, he became the owner and holder of said stock and the president and director of said Middlewest Grain Company; that said Jourgen Olson on January 1, 1918, ceased to be an officer or director of said

company and ceased to have any interest whatever therein, and that since that time said Olson has been without authority to act for or in behalf of said Middlewest Grain Company. The affidavit of Louis Enger states that he is and for several months has been the manager and buyer of the Minot Farmers' Grain Association; that said association has transacted business with the Middlewest Grain Company; that "since the first day of January, 1918, business so transacted by the Minot Farmers' Grain Association with the defendant, Middlewest Grain Company, a corporation, has been transacted with one N. J. Thorson as the representative of the said Middlewest Grain Company, a corporation, and that at no time during said period has the said Middlewest Grain Company been represented in any transaction by said Jourgen Olson." In opposition to these affidavits was submitted an affidavit of plaintiff's attorney. The affidavit is to the effect that on February 23, 1918, he had a conversation with N. J. Thorson, and that said Thorson then stated that he knew nothing about the affairs of the Western Grain Company except as he was informed by Jourgen Olson, and that he took his orders from said Olson. The affidavit further states that on the previous hearing defendant's counsel admitted that Jourgen Olson was the president of said Western Grain Company, and the court was asked to take judicial notice of such statement. (Defendant's counsel denies that he made any such admission. He claims that he merely stated that even conceding that Olson was president of the defendant company still service upon him would not be sufficient unless he was within the state transacting business for the company. The trial court of course knew what the statement was, and it ruled against the plaintiff). Upon consideration of all of these affidavits, and after argument and consideration, the trial court found that said Jourgen Olson was not doing business for, and was not an officer of, the Western Grain Company at the time the summons in this action was served upon him. The court further found that the Western Grain Company was not doing business in this state within the legal contemplation of the term "doing business." An order was entered setting aside the service of the summons, and the plaintiff has appealed therefrom.

The statutes of this state relating to service of foreign corporations, relied upon by the plaintiff in this case read:

"The summons shall be served by delivering a copy thereof as follows:

.   .   .   .   .   .   .   .   .   .   .   .   .   .

" '(5) If the defendant is a foreign corporation, . . . to the secretary of state, . . . or to the president, secretary, cashier, treasurer, a director or managing agent thereof, if within the state, doing business for the defendant.

" '(6) In all cases when a foreign corporation . . . shall not have appointed either the secretary of state or commissioner of insurance, as the case may be, as its lawful attorney upon whom service of process may be made, and such foreign corporation . . . cannot be personally served with such process according to the provisions of subdivision 5 of this section, it shall be lawful to serve such process on any person who shall be found within this state acting as the agent of, or doing business for, such corporation. . . . But the service provided for in this subdivision can be made upon a foreign corporation, joint stock company, or association only when it has property within the state or the cause of action arose therein.' " (Comp. Laws 1913, subds. 5 and 6, § 7426.)

It is well settled that (subject to constitutional limitations) a state may prescribe the terms upon which alone it will permit foreign corporations to do business within its borders. And where a state imposes as a condition, on which a foreign corporation may do business therein, that it accept as sufficient the service of process upon certain designated officers or agents within the state, a foreign corporation subsequently doing business in the state is deemed to assent to such condition, and to be bound by the service of process in the manner specified by the statute. 11 Enc. U. S. Sup. Ct. Rep. 308. Of course, the consent of the corporation to be bound by such service of process is not an actual consent, but an implied one. It has been said by the highest authority to be "a mere fiction, justified by holding the corporation estopped to set up its own wrong as a defense." Pennsylvania F. Ins. Co. v. Gold Issue Min. & Mill. Co. 243 U. S. 93, 96, 61 L. ed. 610, 616, 37 Sup. Ct. Rep. 344. Hence, the power of the state to

prescribe the mode of service and to designate the officer, agent, or representative on whom process may be served is not unlimited. It is subordinate to the requirement of due process of law. It must be exercised so as not to encroach upon the elementary principle of jurisprudence that a court of justice cannot acquire jurisdiction to render a personal judgment except by actual service of process within its jurisdiction, upon the defendant, or some one authorized to accept service in his behalf, or by his waiver of due service.

The Federal Supreme Court has held that three conditions are necessary to give a court jurisdiction to render a personal judgment against a foreign corporation: "First, it must appear that the corporation was carrying on its business in the state where process was served on its agent; second, that the business was transacted or managed by some agent or officer appointed by or representing the corporation in such state; third, the existence of some local law making such corporation amenable to suit there as a condition, express or implied, of doing business in the state." Connecticut Mut. L. Ins. Co. v. Spratley, 172 U. S. 602, 618, 43 L. ed. 569, 574, 19 Sup. Ct. Rep. 308. The same court has also said that in order to be "doing business" so as to render a foreign corporation subject to service of process in a given jurisdiction, the transactions "must be of such character and extent as to warrant the inference that the corporation has subjected itself to the jurisdiction and the laws" of that jurisdiction. St. Louis S. W. R. Co. v. Alexander, 227 U. S. 218, 57 L. ed. 486, 33 Sup. Ct. Rep. 245, Ann. Cas. 1915B, 77. Or, as was stated in a more recent decision: "A foreign corporation is amenable to process to enforce a personal liability, in the absence of consent, only if it is doing business within the state in such manner and to such extent as to warrant the inference that it is present there." And even if it is doing business within the state, the process will be valid only if served upon some authorized agent." Philadelphia & R. R. Co. v. McKibbin, 243 U. S. 264, 61 L. ed. 710, 37 Sup. Ct. Rep. 280.

The same great tribunal has also said that a state law prescribing the mode in which, and designating the agents or officers on whom, process may be served, "must be reasonable, and the service provided for should be only upon such agents as may be properly deemed repre-

sentatives of the foreign corporation" (St. Clair v. Cox, 106 U. S. 350, 27 L. ed. 222, 1 Sup. Ct. Rep. 354), and the character of their agency "such as to render it fair, reasonable, and just to imply an authority on the part of an agent to receive service" (Connecticut Mut. L. Ins. Co. v. Spratley, 172 U. S. 602, 43 L. ed. 574, 19 Sup. Ct. Rep. 308).

The statutes of this state relative to the service of process upon agents or officers of foreign corporations were enacted in view of and recognized the fundamental principles which we have just considered. Subdivision 5, § 7426, supra, provides that a summons in a civil action may be served upon a foreign corporation by delivering a copy thereof "to the president, secretary, cashier, treasurer, a director or managing agent thereof, *if within the state, doing business for the defendant.*" Subdivision 6, of that section provides that in all cases where a foreign corporation has failed to appoint an agent on whom process may be served as required by the statute, and where service cannot be made under subdivision 5, "it shall be lawful to serve such process on *any person who shall be found within this state acting as the agent of, or doing business for, such corporation.* . . . But the service provided for in this subdivision can be made upon a foreign corporation . . . only when it has property within the state or the cause of action arose therein." These provisions speak for themselves. Under their express terms the person upon whom service is made (whether an officer or agent) must be within the state acting as agent of, or doing business for, the corporation at the time service is made. This is the construction which the trial court placed upon these provisions. And we are wholly unable to understand how they are susceptible of any other construction.

The question to be determined therefore is whether the trial court erred in holding that Jourgen Olson was not an officer or agent of the defendant corporation, and as such rating, or doing business, for it within this state, at the time the summons in this action was served upon him.

Of course, the presumption is that the order appealed from was properly entered, and the appellant has the burden of overcoming that presumption. For "it is a general rule of wide application that an appellate court will indulge all reasonable presumptions in favor of the

correctness of the judgment, order, or decree from which the appeal was taken. In other words it will be presumed on appeal, in the absence of a contrary showing, that the trial court acted correctly and did not err. Indeed, error is never presumed on appeal, but must be affirmatively shown by the record; and the burden of so showing it is on the party alleging it, or, as sometimes stated, the burden of showing error affirmatively is upon appellant or plaintiff in error." 4 C. J. 731–733, ¶ 2662.

Appellant assumes that the complaint in this case shows that the alleged cause of action arose in this state. While we do not deem the matter of any controlling importance, we fail to find any basis for the assumption. The complaint alleges that the Western Grain Company is a foreign corporation, but it nowhere alleges that it is or has been doing business in this state. Neither does it allege that the alleged conversion took place in this state. In this connection it may be noted that there is nothing in the affidavits submitted by the plaintiff tending to show that Jourgen Olson had any connection with the particular transaction upon which plaintiff seeks to recover in this case. It may also be noted that all the affidavits,—of plaintiff as well as of the defendant,—tend to show that the defendant is a commission firm, engaged in selling in the Minnesota terminal markets, grain consigned to it by shippers for that purpose. There is nothing in the record to indicate that the grain for which this suit is brought did not come into the possession of the defendant through shipment thereof to it to the place where it was so engaged in receiving and disposing of grain.

In the case at bar, the positive affidavits of Jourgen Olson and N. J. Thorson are to the effect that all of Olson's stock in the Middlewest Grain Company was sold and transferred to Thorson on January 1, 1918; that Thorson immediately succeeded Olson as a director and president of the company, and that Olson ceased to be an officer or agent of the defendant company on the day the stock was transferred and has not since had any authority to represent it. These statements are also to some extent corroborated by the affidavit of Enger. If the statements in Olson's and Thorson's affidavits are untrue, then these men are guilty of perjury. Leaving all question of morality on one side, is it at all reasonable to believe that these men would have com-

mitted perjury in this proceeding? No man commits perjury unless he has some motive for so doing. What did these men or the defendant grain company have to gain in this matter? Certainly nothing very substantial. They could not defeat plaintiff's right of action. If he had such right, that remained unaffected and might be enforced in some court whose jurisdiction over the defendant could not be questioned. It is undisputed that the defendant Middlewest Grain Company is a corporation organized under the laws of Minnesota, and engaged in the grain commission business in the Minnesota terminal markets. It also appears without dispute that its principal office is in Minneapolis, Minnesota. By the laws of Minnesota it is required to maintain an office in that state "in charge of some person upon whom legal process affecting it may be served." See Minn. Gen. Stat. 1913, § 6184; State ex rel. Childs v. Park & N. Lumber Co. 58 Minn. 350, 49 Am. St. Rep. 516, 59 N. W. 1048. Failure to maintain such office constitutes cause for the annulment of its charter. State ex rel. Childs v. Park & N. Lumber Co. supra. By the laws of Minnesota the Middlewest Grain Company is also required to keep its books so "as to show intelligently the original stockholders, their respective interests, the amount which has been paid in on their shares, *and all transfers thereof,* and *such books, or a correct copy thereof, so far as the items mentioned in this section are concerned, shall be subject to the inspection of any person desiring the same."* Minn. Gen. Stat. 1913, § 6177. Under all the circumstances it seems highly improbable that Olson and Thorson would make false affidavits. The trial court believed that the affidavits of Olson, Thorson, and Enger were true, and we see no reason for overturning the trial court's ruling on this question. And of course if Olson had ceased to be the agent of the corporation the service made upon him was a nullity. For in a case like the one at bar, where the authority to receive service is sought to be implied from the character of the acts of the agent in behalf of the corporation (as distinguished from a case where a foreign corporation has specifically appointed an agent on whom process may be served), the question of agency "must be determined by inquiring whether the agent was such at the time the process was served, and not by his relation to the corporation at any other period, anterior or subse-

quent." And "service of process on a person who has ceased to represent a foreign corporation as its agent prior to the bringing of suit is entirely nugatory." Not only is that the purport and effect of our statutes, but that would be true even in the absence of statute by virtue of the constitutional guaranty of due process of law. See 85 Am. St. Rep. 917, 935; 32 Cyc. 567; 21 R. C. L. 1357.

Appellant contends that the trial court erred in reopening the matter and permitting the defendant to introduce the affidavits of Olson, Thorson, and Enger. The contention is without merit. It will be remembered that upon the first hearing the plaintiff asked for and was granted permission to submit certain additional proof. Some time thereafter plaintiff submitted certain affidavits. Ordinary fair play would entitle defendant some opportunity to rebut the affidavits so submitted. No formal order had been entered denying the defendant's motion, although the court apparently had intimated that it deemed the affidavits submitted by the plaintiff sufficient to justify a denial of the motion. But even if a formal order had in fact been entered the court would have had undoubted power to vacate such order. 28 Cyc. 1518. It might even have entertained a second motion to set aside the service of the summons without first formally vacating its former order. Clopton v. Clopton, 10 N. D. 569, 573, 574, 88 Am. St. Rep. 749, 88 N. W. 562; Fisk v. Hicks, 29 S. D. 399, 137 N. W. 424, Ann. Cas. 1914D, 971, 19 R. C. L. 676.

It was suggested upon the oral argument that defendant's appearance was in effect a general one, and therefore conferred jurisdiction under the rule announced by the supreme court of Wisconsin in Grantier v. Rosescrance, 27 Wis. 466. In the case cited the defendant moved to set aside a default judgment on the grounds: (1) That the record did not show a legal service of the summons, and that in fact such service had not been made; and (2) that the complaint failed to state a cause of action. The court ruled that the defendant by challenging the sufficiency of the complaint made a general appearance, and thereby conferred jurisdiction. It will be noted that in the Wisconsin case the defendant did not limit his appearance to the question of want of jurisdiction over his person, but went further and specifically asked the court to determine the sufficiency of the complaint. Of

course, the latter question could not be considered or determined by a court which did not have jurisdiction over the person of the defendant, and hence the court held that the defendant, by asking the court to determine this question, submitted himself to the jurisdiction of the court. But that condition does not exist in the instant case. Here the defendant has not recognized the court's jurisdiction at all. It has consistently denied such jurisdiction. It has appeared for the sole purpose of objecting to the jurisdiction of the court over the defendant, because of want of legal service of process upon it. The authorities all seem agreed that such appearance is a special appearance only, and does not waive the want of service of process See 4 C. J. 1316, and 2 R. C. L. 327. See also 1 Bouvier's Law Dict. Rawle's 3d Rev. pp. 212 et seq. It has been so ruled by the Supreme Court of the United States. See Goldey v. Morning News, 156 U. S. 518, 39 L. ed. 517, 15 Sup. Ct. Rep. 559; Commercial Mut. Acci. Co. v. Davis, 213 U. S. 245, 53 L. ed. 782, 29 Sup. Ct. Rep. 445; Cain v. Commercial Pub. Co. 232 U. S. 124, 58 L. ed. 534, 34 Sup. Ct. Rep. 284; Toledo R. & Light Co. v. Hill, 244 U. S. 49, 61 L. ed. 982, 37 Sup. Ct. Rep. 591; Meisukas v. Greenough Red Ash Coal Co. 244 U. S. 54, 61 L. ed. 987, 37 Sup. Ct. Rep. 593; Re Indiana Transp. Co. 244 U. S. 456, 61 L. ed. 1253, 37 Sup. Ct. Rep. 717; and also by the supreme court of Wisconsin. See Sanderson v. Ohio C. R. & Coal Co. 61 Wis. 609, 21 N. W. 818; Kingsley v. Great Northern R. Co. 91 Wis. 380, 64 N. W. 1036. As was well said by the United States Supreme Court in Goldey v. Morning News, supra: "Irregularity in a proceeding by which jurisdiction is to be obtained is in no case waived by a special appearance of the defendant for the purpose of calling the attention of the court to such irregularity."

It follows from what has been said that the order appealed from must be affirmed. It is so ordered.

BIRDZELL, J., concurs.

GRACE, J., concurs in the result.

BRONSON, J., did not participate.

ROBINSON, J. (concurring). This case presents no serious question. It relates only to the service of a summons on a foreign corporation. By statute such service may be made by delivering a copy of the summons to the president, secretary, treasurer, or managing agent, if within the state and doing business for the corporation. Section 7226, subd. 5. Now the sheriff of Ward county attempted to serve the summons and returned the same with a certificate that he had served it on the defendant by delivering to and leaving with Jourgen Olson, the president and managing agent of the defendant, a true copy. The certificate was insufficient and so were the affidavits in regard to such service, because it was not shown that Olson was doing business for the corporation, and it was clearly shown that at the time of such attempted service he had ceased to be an officer of the company. Hence the service was properly held void.