[File No. 6261.]

S. E. ELLSWORTH, Appellant, v. MARTINDALE-HUBBELL LAW DIRECTORY, INC., a Corporation, Respondent.

(258 N. W. 486.)

298

Opinion filed January 7, 1935.

*S. E. Ellsworth,* for appellant.

*H. E. Rillgers* and *Richardson, Thorp & Watlam,* for respondent.

NUESSLE, J.   Plaintiff brought this action to recover damages for an alleged libel committed by the defendant within the state of North Dakota.   Service of the summons and complaint was had upon a representative of the defendant soliciting sales of its law directory in North Dakota.   Thereafter the defendant, claiming to be a foreign corporation not doing business within the state and that the person on whom service of summons was made was not its agent within the requirements of an agency for the purpose of service of summons, appeared specially, challenged the jurisdiction of the court, and moved that the service be set aside.   Proofs by affidavit and deposition were offered in support of and in opposition to this motion.   The trial court after considering the showing as made granted the motion.   Judgment was entered accordingly.   The plaintiff perfected the instant appeal.

The plaintiff is now and for many years last past has been a resident of the state of North Dakota, engaged in the practice of law.   The defendant is a foreign corporation having its office and principal place of business in the city of New York.   It is engaged in the business of

compiling, publishing and selling a directory of the bar of the United States and Canada. This directory contains a comprehensive digest of the statutes of each state of the United States and each province of the Dominion of Canada. It also gives a rating of lawyers, "their date of birth, their date of admission to practice, their estimated legal ability and character, estimated financial worth, and promptness of paying their bills." Certain advertising matter is also contained therein. The defendant or its predecessors have been engaged in this business in the United States since 1868, and commencing with 1890 each year copies of its law directory have been sent to North Dakota.

The defendant obtains subscriptions to its publication through traveling representatives or agents who call upon members of the bar and solicit their business, and by correspondence direct from the home office with lawyers in various parts of the country. Its representatives are employed on commission. Their compensation depends upon the business they procure for the defendant and which is paid for by the attorneys who subscribe for and advertise in the defendant's publication. Territory is allotted to each representative which he endeavors to cover. When he calls at any particular place he has with him a memorandum from the defendant's home office showing the name of each subscriber to the current edition for which he seeks a subscription. He has also the published data of the bar and other information which he uses in his canvass for new business. His duty is to write as many subscriptions in that locality as he can, maintaining the standard necessary to having his subscriptions accepted. He may also sell, if he can, every lawyer in the community a copy of the directory. There is no restriction on the sale thereof. It is the general practice of these representatives to go into a town, get the business and leave and go to the next town. They are under schedule and submit route lists and places at which they are to be in a certain town on a certain day. Subscriptions and advertising obtained by them are not binding upon the defendant until accepted by it at its New York office. The subscription price is not ordinarily paid to the representative. If it is, such payment is by check payable to the defendant. Joseph E. Jerome, on whom service in the instant case was made, has been engaged as a representative of the defendant since January 1, 1925. He was so engaged when serv-

ice of summons in the instant case was made upon him. His territory includes all of North Dakota and parts of Canada.

But the agent's duties are wider than merely soliciting subscriptions and advertising. He is supposed to consult with those subscribers whom he interviews personally, obtain from them, from banks, and others, such information as he reasonably can concerning those who are rated in the publication, and acquire by contact and inquiry generally in each community he visits such information respecting the lawyers of that community as may be useful and can be used by the defendant. As stated by the trial court:

"Information as to ratings 'is secured through correspondence with many legal authorities, as many as we may get in touch with, that is if it is a difficult case, and the respresentative who visits the town actually secures a great deal of information in his contact from office to office. Those results are received in New York and edited, and the final outcome is published.'

"The salesman who visits the town follows the confidential communications that may·be received in response to his direct inquiries. 'Q. Now, the salesman who visits the town, how does he obtain that information?' 'By absorption. He goes into a town, his object is to write as many subscriptions as he knows that he can get, and he is aided by his interviews with lawyers and by getting the local atmosphere, which enables him to make an intelligent canvass. Now when he obtains the information that is to his interest, he sends it to New York and makes written suggestions and reports any information of interest which he absorbs when he is in town.' 'Q. Does the solicitor who takes subscriptions check the ratings which you have already given to a lawyer and published?' 'A. Yes, if the same solicitor should return to the town, he would certainly make a further report.' In case of complaint as to ratings of a member of the bar, the company makes immediate investigation of the complaint, and when its 'representative visited the town a very careful check would be made of the circumstances.' "

When a subscription is received by the defendant at its New York office it is passed upon and if accepted the directory which is issued annually is, in due course, sent forward to the subscriber. The subscriber is thereupon charged and billed for the subscription price and

for such advertising matter as he has inserted in the publication. . The agent is credited on defendant's books with his commission on the amount so charged. The agent is advised monthly as to the status of his account. Thus he is advised as to who has paid and who has not paid and what subscriptions have been accepted. If a subscriber fails to pay, the amount of the defaulted payment is charged against his credit pro rata. When the agent again visits the locality where the subscriber resides, he is expected to interview the latter and, if possible, procure the payment, of this indebtedness. Such payments are made by draft or check of the subscriber payable to the defendant. When made the agent is again credited with his proportion of the payment so made. The agent has no authority to make contracts with any subscriber that are binding upon the defendant. Nor is he authorized to make adjustments or settlements with delinquent subscribers. This course of procedure with respect to its business as above outlined has been followed by the defendant for many years in North Dakota and elsewhere. During that time several different agents have solicited subscriptions in North Dakota and performed such other duties as were delegated to them. None of these, however, ever resided within the state. Nor did any of them maintain an office or place of business here. None of them was in the state at most for more than a few weeks in any one year. The number of subscribers for the defendant's publication never at any time exceeded eighty-two, and the number of delinquent subscribers referred to its representatives from 1920 on did not exceed a baker's dozen.

The question presented by the motion to dismiss is referable to the due process clause of the Fourteenth Amendment to the Constitution of the United States. Accordingly, it is cognizable by the federal courts and must be considered in the light of the decisions of those courts.

Our statute, § 7426, Comp. Laws 1913, providing for the service of process upon foreign corporations, reads as follows:

"The summons shall be served by delivering a copy thereof as follows:

.    .    .    .    .    .    .    .    .    .

"5. If the defendant is a foreign corporation, joint stock company or association, to the secretary of state, unless the defendant is an in-

surance company, in which case, to the commissioner of insurance, or to the president, secretary, cashier, treasurer, a director or managing agent thereof, if within the state, doing business for the defendant.

"6. In all cases when a foreign corporation, joint stock company or association shall not have appointed either the secretary of state or commissioner of insurance, as the case may be, as its lawful attorney upon whom service of process may be made, and such foreign corporation, joint stock company or association cannot be personally served with such process according to the provisions of subdivision 5 of this section, it shall be lawful to serve such process on any person who shall be found within this state acting as the agent of, or doing business for, such corporation, joint stock company or association. But the service provided for in this subdivision can be made upon a foreign corporation, joint stock company or association, only when it has property within the state or the cause of action arose therein."

This court has heretofore had occasion to pass upon the question as to what constitutes a proper service under the provisions of this section. See Bauer v. Union Cent. L. Ins. Co. 22 N. D. 435, 133 N. W. 988; Kluver v. Middlewest Grain Co. 44 N. D. 210, 173 N. W. 468; Wheeler v. Boyer Fire Apparatus Co. 63 N. D. 403, 248 N. W. 521.

A multitude of cases may be found which touch the question involved on this appeal. There is no doubt as to the rules applicable. The difficulty arises in applying these rules to any particular state of facts. See Farmers' & M. Bank v. Federal Reserve Bank (D. C.) 286 F. 566. Each case stands pretty much on its own bottom. St. Louis S. W. R. Co. v. Alexander, 227 U. S. 218, Ann. Cas. 1915B, 77, 57 L. ed. 486, 33 S. Ct. 245; People's Tobacco Co. v. American Tobacco Co. 246 U. S. 79, 62 L. ed. 587, 38 S. Ct. 233, Ann. Cas. 1918C, 537; Davega v. Lincoln Furniture Mfg. Co. (C. C. A. 2d) 29 F. (2d) 164; Creager v. P. F. Collier & Son Co. (D. C.) 36 F. (2d) 783.

It is clear that the mere solicitation of business within a state by an agent for a foreign corporation does not constitute engaging in business so as to make the corporation present there in the sense that is essential to a valid service of process upon it. Berger v. Pennsylvania Co. 27 R. I. 583, 65 A. 261, 9 L.R.A.(N.S.) 1214, 8 Ann. Cas. 941; Saxony Mills v. Wagner Co. 94 Miss. 233, 47 So. 899, 23 L.R.A. (N.S.) 834, 19 Ann. Cas. 199. On the other hand, it is only on prin-

ciples of comity that a foreign corporation is permitted to engage in business within a state. So, a state may prescribe reasonable requirements as prerequisites to a foreign corporation engaging in business within its limits. St. Clair v. Cox, 106 U. S. 350, 27 L. ed. 222, 1 S. Ct. 354; Sioux Remedy Co. v. Cope, 235 U. S. 197, 59 L. ed. 193, 35 S. Ct. 57. Accordingly it may provide that if a foreign corporation engages in business therein service of process upon it may be made on any person acting as the agent of or doing business for such corporation. A state having so provided, if a foreign corporation engages in business therein it will be presumed to have assented to the requirements. In other words, it will be held to have impliedly consented that service may be had upon it in the manner prescribed. Connecticut Mut. L. Ins. Co. v. Spratley, 172 U. S. 602, 618, 43 L. ed. 569, 574, 19 S. Ct. 308; St. Clair v. Cox, 106 U. S. 350, 27 L. ed. 222, 1 S. Ct. 354, supra; W. J. Armstrong Co. v. New York C. & H. R. R. Co. 129 Minn. 104, 151 N. W. 917, L.R.A.1916E, 232, Ann. Cas. 1916E, 335. As we said in Kluver v. Middlewest Grain Co. 44 N. D. 210, 173 N. W. 468, supra:

"It is well settled that (subject to constitutional limitations) a state may prescribe the terms upon which alone it will permit foreign corporations to do business within its borders. And where a state imposes as a condition, on which a foreign corporation may do business therein, that it accept as sufficient the service of process upon certain designated officers or agents within the state, a foreign corporation subsequently doing business in the state is deemed to assent to such condition, and to be bound by the service of process in the manner specified by the statute. 11 Enc. U. S. Sup. Ct. Rep. 308. Of course, the consent of the corporation to be bound by such service of process is not an actual consent, but an implied one. It has been said by the highest authority to be 'a mere fiction, justified by holding the corporation estopped to set up its own wrong as a defense.' Pennsylvania F. Ins. Co. v. Gold Issue Min. & Mill. Co. 243 U. S. 93, 96, 61 L. ed. 610, 616, 37 S. Ct. 344. Hence, the power of the state to prescribe the mode of service and to designate the officer, agent, or representative on whom process may be served is not unlimited. It is subordinate to the requirement of due process of law. It must be exercised so as not to encroach upon the elementary principle of jurisprudence that a court

of justice cannot acquire jurisdiction to render a personal judgment except by actual service of process within its jurisdiction, upon the defendant, or some one authorized to accept service in his behalf, or by his waiver of due service.

"The Federal Supreme Court has held that three conditions are necessary to give a court jurisdiction to render a personal judgment against a foreign corporation: 'First, it must appear that the corporation was carrying on its business in the state where process was served on its agent; second, that the business was transacted or managed by some agent or officer appointed by or representing the corporation in such state; third, the existence of some local law making such corporation amenable to suit there as a condition, express or implied, of doing business in the state.' Connecticut Mut. L. Ins. Co. v. Spratley, 172 U. S. 602, 618, 43 L. Ed. 569, 574, 19 S. Ct. 308. The same court has also said that in order to be 'doing business' so as to render a foreign corporation subject to service of process in a given jurisdiction, the transactions 'must be of such character and extent as to warrant the inference that the corporation has subjected itself to the jurisdiction and the laws' of that jurisdiction. St. Louis S. W. R. Co. v. Alexander, 227 U. S. 218, 57 L. Ed. 486, 33 S. Ct. 245, Ann. Cas. 1915B, 77. Or, as was stated in a more recent decision: 'A foreign corporation is amenable to process to enforce a personal liability, in the absence of consent only if it is doing business within the state in such manner and to such extent as to warrant the inference that it is present there. And even if it is doing business within the state, the process will be valid only if served upon some authorized agent.' Philadelphia & R. R. Co. v. McKibbin, 243 U. S. 264, 61 L. Ed. 710, 37 S. Ct. 280.

"The same great tribunal has also said that a state law prescribing the mode in which, and designating the agents or officers on whom, process may be served, 'must be reasonable, and the service provided for should be only upon such agents as may be properly deemed representatives of the foreign corporations.' St. Clair v. Cox, 106 U. S. 350, 27 L. Ed. 222, 1 S. Ct. 354, and the character of their agency 'such as to render it fair, reasonable, and just to imply an authority on the part of an agent to receive service.' Connecticut Mut. L. Ins. Co. v. Spratley, 172 U. S. 602, 615, 43 L. Ed. 569, 574, 19 S. Ct. 308."

The statute, subdivision 6, § 7426, Comp. Laws 1913, supra, provides

that where service of process cannot be otherwise made upon a foreign corporation "it shall be lawful to serve such process on any person who shall be found within the state acting as the agent of or doing business for such corporation." It follows that it is not material in the instant case whether those who acted for the defendant within this state are denominated agents or whether they are denominated representatives or solicitors. Certainly they were doing business for the defendant if the defendant was engaged in business within the state. Thus the material question is as to whether the defendant was engaged in business in the state within the meaning of the term "doing business" as contained in the statute.

The defendant insists that, at most, all that was done by its representatives within the state of North Dakota was the solicitation of subscriptions for it and such things as were incidental to such solicitation; that therefore service upon Jerome was not a valid service. In this behalf the defendant cites among other cases, and especially relies upon, Green v. Chicago, B. & Q. R. Co. 205 U. S. 530, 51 L. Ed. 916, 27 S. Ct. 595. In that case the defendant was a railroad corporation, created by the laws of Iowa. Its eastern terminal was in Chicago. It had no lines of railroad in the state of Pennsylvania. It did, however, find it advantageous to solicit freight and passenger traffic in Pennsylvania. For that purpose it employed one Heller, designated him as District Freight and Passenger Agent, rented an office for him in Philadelphia, and advertised these facts to the public. Heller's business was to solicit and procure passengers and freight to be transported over the defendant's railroad. He sold no tickets, and received no payment for transportation of freight. When a prospective passenger desired a ticket and applied to him for one, he took the applicant's money and procured and delivered to him a ticket on some other road running west from Philadelphia to Chicago together with a prepaid order which gave to the applicant upon his arrival at Chicago the right to receive from the defendant a ticket over the latter's road. In case he issued bills of lading for freight shipments, the bills recited they should not be in force until the freight was actually received by the defendant. In passing upon the question as to whether the defendant corporation was doing business within the state of Pennsylvania so as to make service upon Heller valid as against it, the court said that the validity of the service

"depended upon whether the corporation was doing business in that district in such manner and to such an extent as to warrant the inference that through its agents it was present there." The court further said: "The question here is whether service upon the agent was sufficient; and one element of its sufficiency is whether the facts show that the defendant corporation was doing business within the district. It is obvious that the defendant was doing there a considerable business of a certain kind, although there was no carriage of freight or passengers. . . . The business shown in this case was, in substance, nothing more than that of solicitation. Without undertaking to formulate any general rule defining what transactions will constitute doing business in the sense that liability to service is incurred, we think that this is not enough to bring the defendant within the district so that process can be served upon it."

In the Green Case, plaintiff cited as authorities in support of his contention that the service was valid the cases of Denver & R. G. R. Co. v. Roller (C. C. A. 9th) 100 F. 738, 49 L.R.A. 77, where the facts were almost identical with those in the Green Case, and Tuchband v. Chicago & A. R. Co. 115 N. Y. 437, 22 N. E. 360. The court took notice of these cases and says with respect to them: "The facts in those cases were similar to those in the present case, but in both cases the action was brought in the state courts and the question was of the interpretation of state statutes and the jurisdiction of the state courts." Thus, in the Green Case, the court impliedly approved of the holding in the Roller Case and distinguished it by reason of the fact that it involved the construction of a state statute and the question of jurisdiction of a state court over a foreign corporation. So far as we are able to ascertain the Roller Case has never been overruled or repudiated. In this connection see International Harvester Co. v. Kentucky, 234 U. S. 579, 58 L. Ed. 1479, 34 S. Ct. 944.

In the instant case the action was brought in the state courts and the question is of the interpretation of the state statute and the jurisdiction of the state courts. Furthermore, this is not a case where there was merely a solicitation of business for the defendant. The agents not only took subscriptions for the defendant's publication, but they were engaged in gathering information that ultimately was digested and compiled. They collected accounts when it was necessary to do so.

The defendant was not merely operating a printing establishment or engaged in printing and selling directories, it was gathering information from which it compiled these directories. It obtained this information through those who solicited the sale of directories. This information was essential to the defendant's business. It was, in a sense, its stock in trade. Without it the directories would have been of much less value. When complaint was made as to the character of this information, defendant's agents were required to investigate and report with respect thereto. What was done was done continuously as a matter of established business practice through a long period of years. These agents were in North Dakota not as casual visitors. They were there in the usual course of their employment and in the furtherance of the business of the defendant. The case is not one where there was merely an occasional and infrequent business transaction in North Dakota. So, it seems to us, that the defendant was doing business in this state within the sense of that term as used in the statute. International Text-Book Co. v. Pigg, 217 U. S. 91, 54 L. Ed. 678, 30 S. Ct. 481, 27 L.R.A. (N.S.) 493, 18 Ann. Cas. 1103; International Harvester Co. v. Kentucky, supra.

Accordingly, we hold that the defendant was engaged in business in the state of North Dakota and that Jerome, upon whom service of process was had, was, at that time, engaged as the agent of and doing business for the defendant. It follows that the requirements of the statute were thus met and that the service was good. See Genack v. Gorman, 224 Mich. 79, 194 N. W. 575.

Reversed and remanded.

BURKE, Ch. J., and MOELLRING, CHRISTIANSON and BURR, JJ., concur.