[Civil No. 3867.   Filed January 17, 1938.]

[75 Pac. (2d) 38.]

ARCHIE D. SMITH and ETHEL M. SMITH, Husband and Wife, Appellants, v. MARY NORMART, Executrix of the Estate of EDWIN K. SMITH, Also Known as E. K. SMITH, Deceased, Appellee.

Mr. Duane Bird and Mr. Thomas L. Hall, for Appellants.

Messrs. Duffy & Robins, for Appellee.

ROSS, J.—This is an action by Mary Normart, executrix of the estate of Edwin K. Smith, deceased, against Archie D. Smith and Ethel M. Smith, husband and wife, to recover on a promissory note due to the estate and to foreclose a realty mortgage. The facts of the case are as follows:

August 18, 1928, the defendants, at Nogales, Ariz., made their promissory note to Edwin K. Smith for $2,500, with interest at 8 per cent. per annum, payable to his order at Nogales on or before five years, and to secure the note gave a mortgage on Nogales realty.

February 26, 1930, Edwin K. Smith died testate in Chicago, Illinois. In his will he named plaintiff as his executrix and on May 20, 1930, the will was probated in the superior court of Santa Cruz county, Arizona, and letters testamentary issued to her. Later, the date not given, the will was probated in the probate court of Cook county, Illinois, and Hulet S. Terrill appointed administrator with the will annexed.

February 16, 1934, plaintiff commenced this action claiming a balance due on the note of $2,340, with interest at 8 per cent. from January 1, 1930. Defendants answered that on September 7, 1933, there was unpaid on the note the sum of $1,438.58 and no more; that on that day they offered to pay same to plaintiff, but that plaintiff had refused to accept it. They aver they have been ever since able, willing, and ready to pay the note to the person lawfully entitled thereto, or into court if so ordered, but they allege that the note and mortgage were in the physical possession of said Terrill or his attorneys in Chicago at the time of filing the answer, and were there at the time of payee's death, and that they are informed and believe that Terrill, as the personal representative of the deceased, is entitled to the payment of the note and mortgage.

The defendants prayed that Terrill and his attorneys be made parties to the action. This was done by an order of the court and substituted service was had on them, but none made any appearance in the action.

The court found that after Smith's will was probated in Arizona and letters issued to plaintiff

"ancillary probate of said will was had in the Probate Court of Cook County, Illinois . . . that in said respective probate proceedings the domicile of said Edwin K. Smith at the time of his death was found by said Santa Cruz Court to be Santa Cruz County, Arizona, and by said Cook County Court to be Cook County, Illinois."

The court also found that the note and mortgage at the time of intestate's death were in Chicago, and that they are now in the physical possession of Terrill or his attorneys in Chicago, who claim them as assets of the estate in Cook county. It was also found that at the time of his death Smith's domicile was in Santa Cruz county, Arizona.

Upon these facts and the findings made by the court, judgment was entered in favor of plaintiff holding that the plaintiff, as executrix, is the owner and entitled to the possession of the note and mortgage and to collect and receive all moneys due or to become due thereon; that the defendant Terrill and his attorneys (enumerating them) had no right or interest in said paper or the money due thereon, and gave judgment to the plaintiff executrix for the sum of $1,438.58, with interest at 6 per cent. from date, and foreclosed the mortgage.

From such judgment the defendants Archie D. Smith and Ethel M. Smith have appealed.

There is one assignment only, and it is that the court erred in entering judgment for plaintiff executrix for the reason that the promissory note and mortgage were at the time of filing the complaint, and at all times thereafter, in the possession of the personal representative of the deceased in the state of Illinois as part of the assets of such estate in said state of Illinois. Defendants say such assignment is supported by the following proposition of law:

"The legal representative of the estate of a deceased person who physically possesses a promissory note payable to the decedent and a real property mortgage securing the same is entitled, to the exclusion of any other legal representative of such estate in other jurisdictions, to enforce and receive payment of such note, and discharge the same, irrespective of the priorities in the time of the appointments of such legal representatives, and notwithstanding the prior adjudica-

tion by a court in a separate jurisdiction that the latter was the domicile of the decedent at his death.''

When a person dies the law provides how his estate, if he leave one, shall be handled and distributed. If all his personal property is at the time of his death in the jurisdiction of his domicile, the law of that situs controls. But, if it is in two or more jurisdictions, the law of the domicile and the law of the jurisdiction where the personal asset is situate must be looked to for guidance in its handling and distribution. In the latter case, because the laws and public policies of the states are not uniform, there is a lack of uniformity in the principles that govern in the administration of the personal assets. In one respect there is accord, and that is that the principal administration should be at the domiciliary situs and that the administration of the estate by the courts is necessary to pay the expenses of the last sickness, funeral expenses, and debts, if any; to establish the order of succession; and to appoint a personal representative to attend to the details of the administration under the court's supervision and direction. The purpose, then, of administration is to collect the assets of the estate and to liquidate it in the payment of its debts and in accordance with the deceased's will, or, in the absence of a will, in accordance with the laws of descent and distribution at the domicile.

The proceedings probating the will in Arizona and in Illinois are not made part of the record, and there is no showing of any assets other than the balance due on the note and mortgage. When and where the will was made, or who the legatees or devisees are, or their distributive shares thereunder, do not appear. But we have two personal representatives of the decedent, each claiming the right to be paid this debt. The decisions of the courts probating the will and appointing them are final judgments speaking ver-

ity in their respective jurisdictions. The Illinois court holds deceased was domiciled at the time of his death in that state and our court that he was domiciled in Arizona. Both having probated the will, its legality as to the personal estate elsewhere is doubly established, but the proponents of the will for probate in the Illinois court and the representative appointed thereunder are not bound on the existence of the domicile as found by the Arizona court, nor are the Arizona proponents and personal representative bound by the findings of the Illinois court in that respect. Beale's Conflict of Laws, vol. 3, § 469.1; *Matter of Horton's Will, Horton* v. *Dickie,* 217 N. Y. 363, 111 N. E. 1066, Ann. Cas. 1918A 611; *Denny* v. *Searles,* 150 Va. 701, 143 S. E. 484; *Loewenthal* v. *Mandell,* 125 Fla. 685, 170 So. 169.

█ The constructive service upon the personal representative in Illinois in this proceeding to foreclose the mortgage we think was ineffective for any purpose. The rule seems to be that:

"Where neither person nor property of a nonresident is found within the state, a judgment with respect to the rights or obligations of the nonresident is without jurisdiction and wholly void." 33 C. J., § 47, page 1087, and *Pennoyer* v. *Neff*, 95 U. S. 714, 24 L. Ed. 565.

█ Whatever the facts as to domicile, we think we have to proceed in the disposition of the case on the idea that both claimants are legally personal representatives of the deceased. If the courts of Arizona should ignore the finding of the probate court of Illinois as to the domicile of the decedent at the time of his death, which we think under the authorities we have a perfect right to do, still the Illinois court would have the right and power to probate the will in that state and issue letters of administration with the will annexed. Professor Beale, in section 469.2, volume 3, says:

"A will may be probated in a state not the domicil, and must be so probated before distribution can be ordered in the state. By what seems to be the better view, a will may be probated in a foreign state though it has not been so probated at the domicil, though there is perhaps equal authority the other way."

The author also says, under the title "Collection of Chattels and Claims," section 471.1, volume 3:

"The courts from time to time have played with three somewhat contradictory notions, no one of which seems to have been consistently followed through:

"1. That the domiciliary representative as universal successor is vested with title to all the personal estate.

"2. That the dominant policy of the forum is to protect local creditors (and perhaps local distributees) whenever it is within the power of the courts of the forum to do so.

"3. That various kinds of personal property have, in the development of Conflict of Laws principles, come to be recognized as 'localized' in some one appropriate jurisdiction, in which the asset should be administered; that title to such asset vests in the local administrator appointed in such appropriate jurisdiction; that the ownership in such administrator will be recognized in other jurisdictions."

The author quotes the rule under "notion 1," *supra*, from *Wilkins* v. *Ellett*, 9 Wall. 740, 743, 19 L. Ed. 586, as follows:

"The original administrator, therefore, with letters taken out at the place of the domicil, is invested with the title to all the personal property of the deceased for the purpose of collecting the effects of the estate, paying the debts, and making distribution of the residue, according to the law of the place, or directions of the will, as the case may be."

If we, as plaintiff would have us do, grant that the proper rule is as stated, we cannot follow it in this case for the reason that we have two domiciliary representatives.

Admitting the propriety of the dominant policy of the forum, of protecting the local creditors and distributees by not permitting the withdrawal of assets from its jurisdiction until the claims of such creditors and distributees are satisfied, there is no occasion to invoke such policy here, for if there are creditors or distributors in Arizona the record does not advise us who they are or where they are.

Under "notion 3," *supra,* to wit, "Localization of Assets," Professor Beale places bonds, negotiable instruments, insurance policies, and some kinds of tangible personal property and cites cases holding that the proper situs for such assets for administration purposes is where the asset is at the time of the owner's death.   Section 471.4.   He says the picture is somewhat "blurred" as to negotiable instruments, but that there is sufficient authority to justify the acceptance of what he calls the "mercantile notion."   Section 471.8.   To show that negotiable paper assimilates, more or less, tangible personal property, he cites from *Wheeler* v. *Sohmer, Comptroller of New York,* 233 U. S. 434, 34 Sup. Ct. 607, 58 L. Ed. 1030, the following quotation:

"But it is plain that bills and notes, whatever they may be called, come very near to identification with the contract that they embody.   An indorsement of the paper carries the contract to the endorsee.   An indorsement in blank passes the debt from hand to hand so that whoever has the paper has the debt.   It is true that in some cases there may be a recovery without producing and surrendering the paper, but so may there be upon a bond in modern times.   It is not primitive tradition alone that gives their peculiarities to bonds, but a tradition laid hold of, modified and adapted to the convenience and understanding of business men.   The same convenience and understanding apply to bills and notes, as no one would doubt in the case of bank notes, which technically do not differ from others."

"There is," Professor Beale says, "support for the proposition that the presence of a negotiable instrument within the state is sufficient to found an administration upon the estate of a deceased nonresident owner of the instrument."

Section 471.8, *supra.* The cases cited to this note are *Giddings' Exrs.* v. *Green, C. C.,* 48 Fed. 489, 491; *Epping* v. *Robinson,* 21 Fla. 36; *Jahier* v. *Rascoe,* 62 Miss. 699; *Iowa* v. *Slimmer,* 248 U. S. 115, 39 Sup. Ct. 33, 63 L. Ed. 158. In *Giddings' Exrs.* v. *Green, supra,* it is said:

"Negotiable notes partake of the character of personal chattels on account of their transferability. . . . If a negotiable note matures after the death of a testator, as in the case at bar, it becomes vested in his local executor. . . . It is his property . . . and the title to it vests in him precisely as that of a watch or a horse vests in him, as part of the home assets of the testator's estate."

In the Restatement of Conflict of Laws by the American Law Institute, the rule is stated as follows, in section 479:

"Sec. 479. Payment to Administrator in Possession of Negotiable Instrument of Claim Represented By It.

"(1) The administrator in possession of a negotiable instrument belonging to his decedent is entitled to payment thereof, and only such administrator or his transferee is so entitled.

"(2) Payment of a claim represented by a negotiable instrument to any administrator, or the transferee of any administrator of the decedent, who presents and surrenders such negotiable instrument, operates as a quittance to the debtor making such payment."

Comment b under this rule is:

"b. The right of an administrator in possession of a negotiable instrument is the same as that of his decedent. The administrator as holder of the instrument acquires no greater rights than the decedent had.

An action upon a negotiable instrument can be brought only by the person in possession of the instrument.''

We have heretofore announced that we would follow the Restatement of the Law where we are not bound by the previous decisions of this court or by legislative enactment, feeling that by so doing uniformity of decision would be more nearly effected. And, no obstacles appearing to prevent our following that announcement in this case, we adopt the rule in the Restatement as correct under the particular facts of this case.

The judgment is reversed and the cause remanded, with directions that the complaint be dismissed.

McALISTER, C. J., and LOCKWOOD, J., concur.