[Civil No. 4720.  Filed September 25, 1945.]

[162 Pac. (2d) 133.]

CHARLES REED, Appellant, v. REAL DETECTIVE PUBLISHING COMPANY, INC., a Corporation, THE CROWELL PUBLISHING COMPANY, a Corporation, HILLMAN BROTHERS, a Corporation, HILLMAN PERIODICALS, INC., a Corporation, SENSATION MAGAZINE, INC., a Corporation, HARRY E. STRONG and GEORGIA MARIE STRONG, Administratrix of the Estate of Harry E. Strong, Deceased, Appellees.

296

Mr. V. L. Hash, for Appellant.

Mr. Blaine B. Shimmel and Mr. Wallace W. Clark, for Appellees.

MORGAN, J. — Plaintiff's amended complaint charged defendants with the publication and circulation of an alleged libelous statement, together with the unauthorized publication and circulation of his photograph. He alleged that the statements were false and defamatory, and that by reason thereof he was injured in his reputation and good name. He further alleged that the use of his photograph, as published in connection with a magazine story of a crime, and not as news, violated his right of privacy, that he was thereby subjected to ridicule and suffered mental pain and annoyance. He prayed for actual and punitive damages in a substantial sum.

Pending the action, but prior to the filing of the amended complaint, one of the original defendants, Harry E. Strong, died. Plaintiff's application to substitute the administratrix of his estate, his widow, Georgia Marie Strong, as a party defendant was denied. While several defendants were named in the complaint, apparently no manner of service was made on any except Hillman Periodicals, Inc., Hillman Brothers, a corporation, and Sensation Magazine, Inc. The serv-

ice so made was by delivery of a copy of the amended complaint and summons to Georgia Marie Strong, claimed to be the legal agent of these corporations. Hillman Periodicals, Inc., appeared specially and moved to set aside the purported service of summons upon it, on the ground that it was a nonresident corporation, not qualified to transact business in Arizona, that it had never transacted business here, and that Georgia Marie Strong was not its agent for any purpose. This motion was supported by affidavits. Counter affidavits were filed by the plaintiff. The motion was submitted to the court on the showings so made.

From the proofs so submitted it appears that the moving corporate defendant is a foreign corporation which had never qualified to transact business in this state and had not maintained an office in Arizona nor appointed any agent here, and was engaged solely in interstate commerce. It consigned periodicals from points without Arizona to Strong's News Agency, operated by the deceased in his lifetime, and later by the administratrix of his estate—his widow. On the last day of the month, bills for all magazines shipped were sent to the agency, which was then, before the 10th of the following month, required to pay the wholesaler's purchase price, with the privilege of securing a credit for unsold magazines by the return of the top covers thereof. The court granted the motion to set aside the service, by an order dated December 7, 1943, reading as follows:

"Motions having been taken under advisement, it is ordered granting motion to set aside purported service of summons."

The order denying the substitution of the administratrix was not made until January 17, 1944. Notice of appeal from the above orders is dated and was filed on February 16, 1944. Since this is an appeal by the

plaintiff, we will continue to designate the parties as plaintiff and defendants.

By appropriate assignments, plaintiff questions the correctness of the trial court's orders in denying his motion to substitute the administratrix, and in granting the motion to set aside the service as to the corporate defendant. The defendants contend that we are without jurisdiction to pass upon the validity of the court's order°in granting the motion to set aside, service, since it is a final order or judgment, and no appeal was taken therefrom until after the elapse of sixty days after its entry.

The issues so presented would appear simple and easy of solution. We find, however, that this garb of innocence is underlaid with a shield of legal thorns. The problem presented is not free from difficulty. The issues involve matters of interest and moment, difficult of solution, requiring more than ordinary exertion and research, and discrimination in the application of the tested rules which must be our yardstick.

▪ ■ It is our view that insofar as the amended complaint states a cause of action for libel, it does not survive. The common law and the prevalent rule is that a pending action or cause of action for libel abates on the death of either the wrongdoer or the person injured, unless it is within a statute providing for survival. *Blodgett* v. *Greenfield,* 101 Cal. App. 399, 281 Pac. 694; *Jones* v. *Matson,* 4 Wash. (2d) 659, 104 Pac. (2d) 591, 134 A. L. R. 708; *Alles* v. *Interstate Power Co.,* 176 Okl. 252, 55 Pac. (2d) 751; *Hyde* v. *Nelson,* 287 Mo. 130, 229 S. W. 200, 14 A. L. R. 339; Notes, 134 A. L. R. 718, 719; 1 C. J. S., Abatement and Revival, § 145, subsec. d, p. 200.

■ Our law does not specifically provide for the survival of a cause of action for slander or libel. The common-law rule applies, under the provisions of Sec. 1–106, Arizona Code Annotated 1939. *Merrill* v. *Phelps,*

52 Ariz. 526, 84 Pac. (2d) 74. The rule is "not repugnant to, or inconsistent with, the Constitution of the United States, or the constitution or laws of this state, or established customs of the people of this state." Sec. 1–106, *supra; John W. Masury & Son* v. *Bisbee Lbr. Co.,* 49 Ariz. 443, 68 Pac. (2d) 679. The only tort actions which are not abated by reason of the death of the defendant are those listed in Sec. 21–534, Arizona Code Annotated 1939, or which may be preserved by other particular statutes.

It is urged by plaintiff that the following provision of Sec. 21–534, *supra,* should be construed to include an action for libel: "An action to recover damages for injuries to the person . . . shall not abate by reason of the death of the defendant, . . . ." Plaintiff argues forcefully and cites a number of authorities in support of his position that a cause of action for libel is an injury to the person. The weight of authority would appear to be to this effect. *Times-Democrat Pub. Co.* v. *Mozee,* 5 Cir., 136 Fed. 761, 763, 69 C. C. A. 418; Words and Phrases, Perm. Ed., vol. 21; pp. 461, 464. In the case of *Graham* v. *Mixon,* 177 Cal. 88, 169 Pac. 1003, L. R. A. 1918F, 1023, the California supreme court decided otherwise. It has often been held that "injury to the person" is to be construed as referring to personal injury caused by physical acts, and resulting in physical or mental injury. *Resthaven Memorial Cemetery* v. *Volk,* 286 Ky. 291, 150 S. W. (2d) 908; *Sunanday* v. *McKently,* 244 Pa. 533, 90 Atl. 799; *Billingsley* v. *St. Louis, I. M. & S. R. Co.,* 84 Ark. 617, 107 S. W. 173, 120 Am. St. Rep. 95; *Lucas* v. *Lucas Ranching Co.,* 18 Cal. App. (2d) 453, 64 Pac. (2d) 160. We think the courts have generally failed to take into consideration that the expression "injuries to the person" and "personal injuries" are not synonymous. In *McCaffrey* v. *Jackson,* 23 Pa. Dist. 173, 174, the court makes the distinction, as paraphrased in 43 C. J. S. Injury, note 33, p. 1117:

"In the former, the noun 'person' indicates a natural body, or perhaps a body corporate, and the injuries contemplated are injuries to that body. In the latter phrase the noun employed is 'injury,' and the word 'personal' is merely adjective, and, therefore, of far less significance than when used substantively."

■ It is commonly understood that an action or cause of action for libel is injury to character or reputation. Black's Law Dict., 3d Ed., 1103; 33 Am. Jur. 38, sec. 3, Libel and Slander. Libel is defined in all dictionaries as a publication tending to blacken or besmirch character or reputation. In ordinary acceptation, libel is considered as relating to character and reputation, as distinct from a wrongful injury to the person. The civil action for libel is not defined by the laws of the state, therefore, in this action the statutory definition of criminal libel may be used as a guide. *Central Arizona Light & Power Co.* v. *Akers,* 45 Ariz. 526, 46 Pac. (2d) 126. Sec. 43–3501, Arizona Code Annotated 1939, in substance, describes the offense of libel as:

" . . . any malicious falsehood (or defamation) expressed by writing . . . which tends to bring any person into disrepute, contempt or ridicule, or to blacken the memory of one who is dead; . . . or . . . which tends to impeach the honesty, integrity, virtue or reputation, or publish the natural or alleged defects of one who is alive, and thereby to expose him to public hatred, contempt or ridicule."

■ As defined in the statute, and as commonly understood and used, libel is not to be confused with "injury to the person." Whatever the construction may have been in other jurisdictions, we must give to the meaning of the term as used in Sec. 21–534, *supra,* the obvious legislative intent. The statutory rule is found in Sec. 1–103, subd. 1, Arizona Code Annotated 1939, "Words and phrases shall be construed and understood according to the common and approved usage of the language; . . . ." The legislature has provided a one-

year limitation on actions for "injuries done to the character or reputation of another by libel or slander." Sec. 29–201, Arizona Code Annotated 1939. In the next Section, 29–202, a two-year limitation period is fixed for "injuries done to the person of another." From this it clearly appears that the legislature used the term "injuries to the person" in the latter section as excluding such injuries as "libel" designated in the preceding section. There is nothing in Sec. 21–534 which would authorize us to give the phrase "injuries to the person" a broader meaning than as thereafter given to it by the legislature. We must, therefore, follow the legislative construction, and hold that Sec. 21–534 does not authorize the substitution of the personal representative of the deceased defendant. No doubt the legislature, in adopting the survival statute for certain pending actions, had also in mind the fact that "statutes enlarging the causes of action which survive usually except causes of action for slander and libel." 1 Am. Jur. 87, sec. 122, Abatement and Revival.

█ Plaintiff asserts that if it should be held the libel cause of action does not survive, the allegations pertaining to the invasion of his right of privacy, which is a property right, constitutes a cause of action which does survive. As alleged, plaintiff's cause based on the invasion of his right of privacy does not involve any property right. For the wrongful invasion of the "right of privacy," or, as it is defined, "the right to be let alone," a cause of action has been recognized. Restatement, Torts, vol. 4, sec. 867 acknowledges the right as follows:

"A person who unreasonably and seriously interferes with another's interest in not having his affairs known to others or his likeness exhibited to the public is liable to the other."

█ This court has adopted the rule that where not bound by its previous decisions or by legis-

lative enactment, it would follow the Restatement of the Law. *Smith* v. *Normart,* 51 Ariz. 134, 75 Pac. (2d) 38, 114 A. L. R. 1456; *Cole* v. *Arizona Edison Co., Inc.,* 53 Ariz. 141, 86 Pac. (2d) 946; *Waddell* v. *White,* 56 Ariz. 525, 109 Pac. (2d) 843. We think it would be unwise to follow this rule blindly, particularly when to do so would result in the recognition of a new cause of action in this jurisdiction. In view of our former pronouncements, great weight must be given to the recognition of this right in the Restatement of the Law, but notwithstanding this, we deem it our duty to consider the merits of this new right. If it is based on principles of justice, and has been generally acknowledged elsewhere, there would seem to be no reason why the cause of action should not be considered as existing here.

Remedy for the protection of the right of privacy was not afforded at ancient common law. The law did not protect the right. The protection of privacy was a matter of individual effort. The recognition of a right of action for invasion of the right of privacy is an outgrowth of the complexities of our modern civilization, and doubtless due to the wider range of publicity. Not until the latter half of the past century was there a widespread dissemination of publications. For the most part written publications were localized. Individuals, as a rule, remained at home. They were known intimately in their communities. They were neighbors rather than acquaintances. Under these circumstances, an unauthorized or wrongful printing, writing, picture, or publication of such a character as to invade the right of privacy, might have small effect and could be largely corrected or minimized by the efforts of the injured party. Because of the changes mentioned, this became no longer feasible. Unscrupulous advertisers and publishers without authority used pictures of individuals for gain or in a sensational way

to promote sales of publications. To meet this situation, the courts about the first of the century began to recognize the rights of privacy in a legal way, and afforded relief for its violation.

■■ While the doctrine of privacy is still in its infancy, the following principles appertaining to actions for its protection are fairly well established. Strictly, it is an incident of the person, and not of property. It is a personal action which does not survive the death of the injured party. It does not exist if there has been consent to publication, or where the plaintiff has become a public character, and thereby waived his right to privacy, nor in the ordinary dissemination of news and events, nor in connection with the life of a person in whom the public has a rightful interest, nor where the information would be of public benefit. *Metter* v. *Los Angeles Examiner,* 35 Cal. App. (2d) 304, 95 Pac. (2d) 491. While the right always existed, its protection is a new doctrine in the law and may be regarded as a creation of modern common law. Two states have adopted statutes which, to a limited extent, recognize the right of privacy and provide for its protection. Courts of ten American jurisdictions have held that there is a legally enforceable right of privacy. Four others appear to favor the doctrine. In two states the existence of the right has been denied. The courts of three other jurisdictions have indicated doubts of the existence of the right. 41 Am. Jur. 924, Privacy, § 1 *et seq.;* 138 A. L. R. 22, sec. I *et seq.,* Annotation, Right of Privacy.

■ The question of whether a right of action for the invasion of the right of privacy exists has never, heretofore, been considered by this court. The majority of the cases, and "the preponderance of authority supports the view that, independently of the common rights of property, contract, reputation, and physical integrity, there is a legal right called the right

of privacy, the invasion of which gives rise to a cause of action." 138 A. L. R. 28. We believe the majority view to be sound and adopt the doctrine here.

What we have said does not mean that the cause of action for an invasion of the right of privacy may not involve property or contract rights. The doctrine has been asserted as applying in cases where photographs belonging to the plaintiff were wrongfully published in violation of an implied contract, or where the photographs were procured through trespass. 138 A. L. R. 33. But these decisions are not predicated upon "the right of privacy as an independent legal concept." 138 A. L. R. 33. In the case at bar, no allegations appear in the complaint to bring the case within the view that either a "property" or "contract" right was violated. There is no claim that the photograph published was plaintiff's personal property, or that its value is involved, or that the defendants violated any implied contract. The claim is for damages for mental pain and annoyance resulting from the unauthorized publication of plaintiff's picture.

It is said, "In order to recover for an invasion of the right of privacy, it is not necessary for the plaintiff to allege or prove special damages." 41 Am. Jur. 934, Privacy, § 11. The test for the action is admirably stated at page 935, § 12 of the Privacy Article in 41 Am. Jur., as follows:

"In order to constitute an invasion of the right of privacy, an act must be of such a nature as a reasonable man can see might and probably would cause mental distress and injury to anyone possessed of ordinary feelings and intelligence, situated in like circumstances as the complainant; and this question is to some extent one of law."

The gravamen of the action here charged is the injury to the feelings of the plaintiff, the mental anguish and distress caused by the publication. In an

action of this character, special damages need not be charged or proven, and if the proof discloses a wrongful invasion of the right of privacy, substantial damages for mental anguish alone may be recovered. *Hinish* v. *Meier & Frank Co.,* 166 Or. 482, 113 Pac. (2d) 438, 138 A. L. R. 1; Note, 138 A. L. R. 106. Unlike libel and slander, the gist of the cause is not injury to the character or reputation which appertains to the standing of a person in the eyes of others and are attributes in law separate from the "person." "Reputation of a person is the estimate in which he is held by the public in the place where he is known. *Cooper* v. *Greeley,* 1 Denio, N. Y., 347." Black's Law Dict., 3d Ed., 1537. In actions for damages, "character" is considered as practically synonymous with "reputation." Black's, *supra.*

■ Since, under the law, recovery may be had for an invasion of the right of privacy for injured feelings alone, the wrongs redressed must be considered as a direct rather than an indirect injury and one that is wholly personal in character, not depending on any effect which the publication may have on the standing of the individual in the community. It seems to us that the mind of an individual, his feelings and mental processes, are as much a part of his person as his observable physical members. An injury, therefore, which affects the sensibilities is equally an injury to the person as an injury to the body would be. In that respect a cause of action for the violation of the right of privacy, causing mental suffering to the plaintiff, is an injury to the person. *Wyatt* v. *Hall's Portrait Studio,* 71 Misc. 199, 128 N. Y. Supp. 247. This action, insofar as it is based on a violation of the right of privacy, may be revived against the administratrix of the deceased defendant under the terms of Sec. 21–534, *supra,* the action alleged being one for "injury to the person."

■ In connection with plaintiff's second assignment, defendants have called attention to *Hallgren* v.

*Sunset Paint Co.,* 28 Ariz. 176, 236 Pac. 689, and *Young Mines Co., Ltd.,* v. *Blackburn,* 22 Ariz. 199, 196 Pac. 167. Their position is that under the two cases mentioned, the order setting aside service was a final judgment, and no appeal having been taken therefrom within sixty days, we have no jurisdiction to consider the ruling below. In the Hallgren case, upon quashing the service, the trial court specifically adjudged that it had no jurisdiction over the person of the defendant. We held this to be a final order and disposition of the cause, not requiring an entry of dismissal. In the Blackburn case, the order was for the dismissal of the action. Neither decision supports defendants' argument in the state of the record before us. Here the order granting the motion to set aside service did not decree that the lower court "has no jurisdiction of the person of the defendant" as in the Hallgren case [28 Ariz. 176, 236 Pac. 690]. Nor was it followed by a dismissal of the action against the corporate defendant. In the absence of a dismissal or judgment by the trial court that it had no jurisdiction, or that jurisdiction could not properly be acquired, we cannot say that the order is final, and are therefore compelled to determine the validity of the court's order.

Frankly, we see no merit to plaintiff's assignment that the court erred in setting aside the purported service on the corporate defendant. The matter appears to have been submitted on affidavits. The facts amply justify the court in holding that the party served was not the agent of the defendant. The cases cited by plaintiff, and particularly *Clements* v. *MacFadden Publications, Inc., D. C.,* 28 Fed. Supp. 274, have little application. In the Clements case, the defendant, a foreign corporation, in addition to a traveling representative in the state, had entered into a contract with a local resident, designated as "agent." Publications appear to have been shipped to this agent for resale.

Title to all magazines remained in the defendant. It was the duty of this agent to co-operate with the defendant to increase the sale of its magazines in the agent's territory. He was required to make city-wide checkups, increase the sales of old and adding new retailers, etc. None of these elements appear here.

In the case at bar, the corporate defendant seems to have had no control over either of the Strongs. They were not considered as agents. The transactions between the Strongs and the corporate defendant were apparently sales on consignments. So far as the foreign corporation was concerned, it was enagaged only in interstate commerce, and had, no Arizona agent. Sales on consignment, factorage agreements, or sales on commission, by a foreign corporation to a dealer within the state, of products from without the state, do not constitute doing business within the state, where the local merchant or factor acts entirely in his own behalf in making sales or contracts for the sale of such goods. 20 C. J. S. 59, Corporations, § 1840; *Hessig-Ellis Drug Co.* v. *Sly,* 83 Kan. 60, 109 Pac. 770, Ann. Cas. 1912A, 551; *J. R. Watkins Med. Co.* v. *Holloway,* 182 Mo. App. 140, 168 S. W. 290; *Dr. Koch Veg. Tea Co.* v. *Malone* (Tex. Civ. App.), 163 S. W. 662; *Watson* v. *J. R. Watkins Co.,* 188 Miss. 435, 193 So. 913, 915. In the Watson case, an agreement was executed in Minnesota to furnish the purchaser, a resident of Mississippi, the products of the foreign corporation from without the state, at wholesale for resale. In rejecting the claim that the corporation was doing business within the state, the court said:

" . . . The requirement that sales be reported to the seller by the purchaser does not prevent the passing of the title, nor does a provision in the contract allowing the purchaser to return unsold goods, nor does the designation of the purchaser's sale territory. . . . "

Three conditions are necessary to give a court jurisdiction to render a personal judgment

against a foreign corporation. It must be carrying on business in the state where process is served on its agent. Its business must have been transacted or managed by an agent or officer appointed by or representing the corporation in the state where service is had. The local law must make the corporation amenable to suit as a condition, express or implied, of doing business in the state. *Connecticut Mut. L. Ins. Co.* v. *Spratley,* 172 U. S. 602, 19 Sup. Ct. 308, 43 L. Ed. 569. The business, to make a foreign corporation amenable to process to enforce personal liability, must be "in such manner and to such extent as to warrant the inference that it is present" in the state. "And even if it is doing business within the state, the process will be valid only if served upon some authorized agent." *Philadelphia & Reading R. Co.* v. *McKibbin,* 243 U. S. 264, 37 Sup. Ct. 280, 61 L. Ed. 710. The service can only be had on agents who "may be properly deemed representatives of the foreign corporation." *St. Clair* v. *Cox,* 106 U. S. 350, 1 Sup. Ct. 354, 360, 27 L. Ed. 222. And quoting from *Ellsworth* v. *Martindale-Hubbell Law Directory,* 65 N. D. 297, 258 N. W. 486, 489, "the character of their agency 'such as to render it fair, reasonable, and just to imply an authority on the part of an agent to receive service' *(Connecticut Mut. L. Ins. Co.* v. *Spratley, supra)."*

▆▆▆ We believe the following excerpt from 20 C. J. S. 210, Corporations, § 1942, fairly covers this case, and disposes of plaintiff's claim that the Strongs were agents of the corporate defendant:

"A *local dealer* is not an agent within the meaning of a statute authorizing service of process on foreign corporations where he purchases goods from the corporation and in turn sells them to customers on his own account rather than as agent of the corporation. This is true, even though the corporation . . . reserves the right on the termination of the contract to take back the goods remaining on hand at invoice prices. To be

an agent for service of process, the local dealer must be in a position in some way to bind the foreign corporation in some business transaction."

The trial court very properly granted the motion to set aside the purported service. Under the facts shown, Mrs. Strong was not a local agent of the corporation upon whom service could be had under the provisions of Sec. 21–313, Arizona Code Annotated 1939. *Wells Fargo & Co.* v. *McArthur Bros. M. Co.*, 42 Ariz. 405, 26 Pac. (2d) 1021.

The cause is remanded to the trial court with instructions to substitute the administratrix of the deceased as a defendant in the action insofar only as the complaint states a cause for the invasion of the right of privacy.

STANFORD, C. J., and LaPRADE, J., concurring.