**Archie EPLING, Plaintiff-Appellant,**

**v.**

**UNITED STATES of America,
Defendant-Appellee.**

**No. 24495.**

United States Court of Appeals,
Ninth Circuit.

Dec. 2, 1971.

Edward Epling (argued), Edward L. Hohn, Phoenix, Ariz., for plaintiff-appellant.

Alice A. Wright, Asst. U. S. Atty. (argued), Richard K. Burke, U. S. Atty., Richard C. Gormley, Asst. U. S. Atty., for defendant-appellee.

Before TRASK and CHOY, Circuit Judges, and BYRNE, Sr., District Judge*.

CHOY, Circuit Judge:

Archie Epling brought this negligence action against the United States under the Federal Tort Claims Act. The District Court found no negligence on the part of the government and entered judgment against Epling, who appeals. We affirm.

Epling went for a late Sunday afternoon ride on a motorcycle with a female passenger riding on the seat behind him, along Route 66, westerly of Winslow, Arizona. About 6:00 p.m. as dusk was coming on, Epling turned the motorcycle onto an access road, leading to a radar station, which the Air Force had deactivated about a year before. Epling had been there once before and knew that the abandoned radar station was government property.

Neither Epling nor his passenger saw the sign located right after the access road leaves Route 66, which read:

> WARNING
> RESTRICTED AREA
> It is unlawful to enter
> within this area without
> written permission of
> the Commander.

Nor did they see another sign which indicated the speed limit on the road to be five miles per hour.

About one-half mile up the road, a steel cable was stretched across the way attached to two 4 x 4 posts on either side of the road. A wooden sign hung from the middle of the cable; it read: "Stop —Do Not Enter." Several feet behind the cable, there was a standard stop sign, mounted on a portable base.

A civilian employee of the Government was sometimes stationed at the

---

* The Honorable William M. Byrne, Sr., United States District Judge, Central District of California, sitting by designation.

point in the road where the cable crossed. His primary job was maintenance. Still, about half the time, he was near the cable, when he had the duty to discourage unauthorized persons from continuing up the road. The guard had already gone home on the Sunday that Epling came driving up the access road at about 25 miles per hour.

Neither Epling nor his passenger saw the cable. Epling was hit across his chest and hurled to the pavement, seriously injuring his back. His passenger was also knocked off the vehicle, but she was not injured.

The common law standards of landowner's liability, based upon the plaintiff's status as trespasser, licensee or invitee, have come under heavy attack in recent years.[1] Appellant forcefully urges that this court should jettison the old common law apparatus, riddled as it is with exceptions and inconsistencies; he would substitute a duty of reasonable care, which may be influenced but not controlled by the status of the injured party.[2]

■ Whatever the merits of appellant's position are, we are required to apply the law of Arizona, where the alleged tort occurred. A person makes out a case under the Federal Tort Claims Act "where the United States, if a private person, would be liable to the claimant in accordance with the *law of the place where the act or omission occurred.*" (emphasis added) 28 U.S.C. § 1346(b).

■ At trial, Epling attempted to establish that the access road was public and that the government therefore owed a duty of reasonable care. The trial judge found that the road was not pub-

lic. The evidence in support of that finding is sufficient.

Alternatively, Epling's evidence was submitted on the theory that the road's appearance misled the people in the community of Winslow into believing that the road was public. If so, then the Government owed the same duty of care as would have been required for a public road. Olsen v. Macy, 86 Ariz. 72, 340 P.2d 985 (1959). This is the doctrine of the "misled invitee," an exception to the harsh standards applicable to licensees or trespassers.

The record supports the trial judge's rejection of Epling's claim that he was a "misled invitee." The sign at the beginning of the access road gave notice to all that entrance onto the premises was allowed only with permission of "the Commander."

■ Epling contends, however, that the obvious abandoned condition of the property—which was widely known in Winslow, would lead a reasonable man to believe that the reference to a Commander was no longer current and could be disregarded. Several of Epling's witnesses testified that they took pleasure trips on the access road at various times, both before and after the radar base was abandoned.

The record indicates sufficient evidence that the Government took precautions so as not to mislead the community into thinking that the road was public. The cable was constructed for that very purpose. Even some of Epling's witnesses acknowledged that the cable deterred them from proceeding up the road. Moreover, a guard was often there to inform people that the road was not open to public use. This evidence is

1. *See, e. g.*, Calabresi, "Some Thoughts on Risk Distribution and the Law of Torts," 70 Yale L.J. 499 (1961); Ehrenzweig, "Assurance Oblige—A Comparative Study," 15 Law and Contemporary Problems 445 (1950); Long, "Land Occupants Liability to Invitees, Licensees and Trespassers," 31 Tenn.L.Rev. 485 (1964); Schopler, "Modern Status of Rules Conditioning Landowners' Liability Upon Status of Injured Party as Invitee, Licensee, or Trespasser," 32 A.L.R. 3d 508 (1970).

2. This is, for example, the approach of the California Supreme Court. Rowland v. Christian, 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 (1968).

ample to support the district judge's rejection of Epling's "misled invitee" claim.

 At most, Epling was a gratuitous licensee. Concerning a tort claim of one who enters onto government property which has been de-activated, there is no Arizona precedent on point. However, the Arizona Supreme Court has consistently held that the Restatement rules are the law of the state, where no case has yet been decided. Smith v. Normart, 51 Ariz. 134, 75 P.2d 38 (1938); Waddell v. White, 56 Ariz. 525, 109 P.2d 843 (1941); Reed v. Real Detective Publishing Company, 63 Ariz. 294, 162 P.2d 133 (1945).

According to the Restatement, a landowner owes a duty to give adequate warning to frequent trespassers, the same as to licensees. Restatement of Torts, Second § 335. The government's supervising employee knew that the road from its beginning to the cable was used often enough to require a guard to be posted.

The government owed a duty to Epling as a gratuitous licensee to warn of hidden perils. Sanders v. Brown, 73 Ariz. 116, 238 P.2d 941 (1951). What is a "hidden peril" has been delimited by the Arizona Supreme Court in Mull v. Roosevelt Irr. Dist., 77 Ariz. 344, 272 P. 2d 342 (1954), wherein the court stated:

> "[R]unning through the history of the principle and the decisions . . . is generally the idea of deceit or camouflage. (citation omitted) It is an act or omission of the defendant which gives a dangerous instrumentality or condition an innocent appearance to the unwary licensee. . . . Failure to provide protection against injury from its existence must be the equivalent of a willful and wanton act." 77 Ariz. at 347, 272 P.2d at 344.

The Arizona Supreme Court emphasized the "hidden" element of the peril in Parker's Hamburger Number One v. Fitzgerald, 88 Ariz. 276, 356 P.2d 25 (1960). Plaintiff was running across defendant's parking lot, in order to catch a bus. She tripped over a pipe that was raised five inches off the ground, seriously injuring herself. The court reversed a jury verdict for plaintiff, holding that one who does not see a plainly visible danger cannot come within the "hidden peril" rule.

The record in the instant case indicates that the cable across the roadway could be seen from a considerable distance. One of Epling's witnesses testified that he was able to stop his car before the cable, while travelling at approximately 15 miles per hour. It is significant that Epling was driving the motorcycle at a speed of 25 miles per hour, in a zone clearly marked 5 mile speed limit. These facts are sufficient evidence to support the district court's decision that the government was not negligent in constructing and maintaining the cable and the road, that Epling was contributorily negligent and that his negligence proximately caused the accident.

Affirmed.