484 P.2d 662

**ARIZONA REAL ESTATE DEPARTMENT, Appellant,**

v.

**ARIZONA LAND TITLE & TRUST CO., an Arizona corporation, Appellee.**

**No. 2 CA–CIV 946.**

Court of Appeals of Arizona, Division 2.

May 7, 1971.

Rehearing Denied June 9, 1971.

Review Denied June 29, 1971.

Gary K. Nelson, Atty. Gen. by James W. Woodcock, Asst. Atty. Gen., Phoenix, for appellant.

**510**

Bilby, Thompson, Shoenhair & Warnock, P. C. by Michael Lacagnina and T. Scott Higgins, Tucson, for appellee.

HATHAWAY, Judge.

This case, involving a superior court order directing payment of $10,000 to the appellee from the real estate recovery fund pursuant to A.R.S. § 32–2188, was previously considered by us in Arizona Real Estate Department v. Arizona Land Title and Trust Co., 9 Ariz.App. 54, 449 P.2d 71 (1968). There, we reversed the order directing payment and remanded for a new hearing on the issue of whether this misappropriation occurred after July 1, 1964, the effective date of the act, A.R.S. § 32–2188, subsec. B.

On remand, after additional evidence was taken, the court granted judgment in favor of appellee and against the Arizona Real Estate Department in the amount of $10,000. This appeal is from that judgment.

The difficulty that required remand was the absence in the former record of evidence pinpointing the broker's misconduct to some time after July 1, 1964. The showing that the misappropriation occurred "some time between May 6, 1964 and early 1965" was insufficient.

As we noted in our former opinion, the conditions for recovery from the fund are set out in A.R.S. § 32–2188, subsec. B which provides:

"When any aggrieved person recovers a valid judgment in any court of competent jurisdiction against any real estate broker, real estate salesman, * * *, for any act, representation transaction, or conduct which is in violation of the provisions of this chapter or the regulations promulgated pursuant thereto, which occurred on or after July 1, 1964, the aggrieved person may * * * apply to the court for an order directing payment out of the real estate recovery fund, * * *." (Emphasis supplied)

This section makes it clear that recovery from the fund is premised upon a judg-

ment based upon proscribed conduct occurring on or after July 1, 1964. The real estate broker understood certain fiduciary duties with respect to the funds received, and both parties cite regulation 21 of the State Real Estate Board for guidance. Appellee also relies on regulation 28. Those regulations provide:

"21. All monies of whatever kind or nature including instruments representing same belonging to others and accepted by a broker shall be deposited expeditiously in a separate bank account maintained by the broker as a depository for funds belonging to others and shall be retained in said bank account until the transaction involved is consummated or terminated and proper account is made; provided that if such funds are to be deposited in escrow with a closing agent other than the broker, such funds may be deposited with the escrow agent.

\*   \*   \*   \*   \*   \*

28. The licensee shall perform all acts required of him through entry into any agreement authorized by the holding of a license as expeditiously as possible; delays, intentional or through neglect, in such performance shall be considered as detrimental to the public interest and shall be considered conduct in violation of § 32–2153, Arizona Revised Statutes."

The check in question, for $20,490.02, was delivered to the broker on May 6, 1964, and deposited to his escrow account on that same day. The deposit increased the balance of the escrow account to $27,-584.39. The funds in question were not applied to the note and mortgage for which they were given, nor did the broker ever satisfy the note and mortgage from any source. The June 30th balance of the broker's escrow account was $2,041.11. The balance on July 1, 1964, was $5,469.11. The thrust of the appellant's argument is that the real estate broker transgressed Rule 21 of the Real Estate Board regulations on May 12, 1964, when he depleted his escrow account to $17,681.21, clearly showing that the funds given to satisfy the

note and mortgage had not been retained in the account. He breached his fiduciary duties and consequently his professional responsibility as a broker.

There is no dispute that the broker did clearly violate his professional responsibility before July 1, 1964, in dissipating the trust funds from the escrow account and he specifically breached Rule 21, supra. However, another question is whether appellee was further aggrieved by acts of appellant occurring after July 1, 1964. All evidence was documentary and we are in an equal position with the trial court to assess the weight of the evidence. Arizona Central Credit Union v. Holden, 6 Ariz. App. 310, 432 P.2d 276 (1967). Included in the evidence before the trial court was an affidavit from the broker which provided in part:

"5. At all times after May 6, 1964, I intended to deliver the proceeds to Mr. and Mrs. Gordon upon their demand, and from and after July 1, 1964, was in a position to deliver the proceeds, and it was not until the late months of 1964 and early 1965, and especially just prior to March 12, 1965, that my financial situation prevented me from fully paying the proceeds to Mr. and Mrs. Gordon. On March 12, 1965, I did offer to deliver other real properties and mortgages to Mr. and Mrs. Gordon, but they insisted upon cash and I could not comply with this request."

Also before the judge was a deposition of the broker in which he stated that he could not at any time either after or upon July 1, 1964, pay the money to the Gordons. Should the deposition take preference over the affidavit or should the affidavit be relied upon as more truthful? If the affidavit is given preference, then the appellee is entitled to collect from the fund since the broker could have performed his duty after July 1, 1964. Following the broker's deposition would lead to deny appellee's claim since he there stated he did not have the funds on or after July 1, 1964.

Affidavits differ from depositions in that affidavits are taken ex parte, voluntarily, without notice to the adverse party, and without cross-examination by the adverse party. 3 Am.Jur.2d 380–81, Affidavits § 2; 2 C.J.S. Affidavits § 1b, p. 923. Depositions lack the voluntariness of affidavits and cross-examination is allowed, which is more in line with an adversary proceeding. Because the affidavit lacks the confrontation aspect of the deposition and is a one-sided proposition, we believe that when an affidavit and deposition by the same person contradict each other, a deposition taken when the deponent is subject to cross-examination by the adverse party, normally should be held to be the more trustworthy of the two. The lower court is therefore reversed since in the deposition the broker stated he could not have on or after July 1, 1964 made the requisite payment.

KRUCKER, C. J., and HOWARD, J., concur.