512 P.2d 872

**REALTY EXECUTIVES, INC., an Arizona corporation, and Bernard J. Thuerauf, Appellants,**

v.

**Charles Dale WILLIS and Ida Willis, his wife, Reed Morgan Willis and Janice Willis, his wife, and Fern R. Willis, a widow, Appellees.**

No. 1 CA–CIV 1870.

Court of Appeals of Arizona,

Division 1,

Department B.

July 31, 1973.

Rehearing Denied Sept. 5, 1973.

Review Denied Oct. 16, 1973.

Evans & Kunz, Ltd., by William G. Stinson, Phoenix, for appellants.

Kleinman, Carroll & Kleinman by Conrad J. Kleinman, Phoenix, for appellees.

EUBANK, Presiding Judge.

The main question raised by this appeal is whether the trial court properly granted appellees' summary judgment under Rule 56, Rules of Civil Procedure, 16 A.R.S. Appellants argue that the trial court erred in granting appellees summary judgment and in not granting them summary judgment on their cross-motion. In the alternative appellants argue that there were genuine issues as to material facts which require that the summary judgment be reversed.

Our review of the record confirms that the summary judgment was premature as there are genuine issues as to material facts remaining to be resolved by the finder of fact. For this reason we must reverse the summary judgment.

The appellants filed their complaint against the appellees on September 11, 1970, alleging their claim to a real estate commission based upon the sale of real property under a written exclusive listing agreement executed by all the parties herein. Attached to the complaint as exhibits

were a copy of the exclusive listing agreement, a listing of the legal description of the real property involved, and a copy of Arizona Title Insurance Company's escrow instructions, which was executed by all of the parties four days after the executed exclusive listing agreement, wherein the appellant Bernard J. Thuerauf, individually, or his "nominee" is the buyer and the appellees are the sellers. The escrow instructions specifically provide for appellants' real estate sale commission in the same amount as provided in the exclusive listing agreement, even though appellant or his "nominee" is listed as the buyer.

Appellees answered admitting the exclusive listing agreement with appellants and admitting the sale of the real property within the time provided for by the exclusive listing, but they denied that the sales commission was due appellants because the execution of the Arizona Title escrow instructions had "revoked and terminated" the exclusive listing agreement. Appellees raised other affirmative defenses, i. e., the complaint failed to state a claim for relief; the escrow instructions were a "written revocation" of the exclusive listing and appellants "could not act as exclusive agents for the appellees and as purchasers of the property"; the exclusive listing was contrary to law as a matter of public policy since the probate court had jurisdiction over the sale of the land and such sale was subject to the court's confirmation, and the exclusive listing was not approved by the court; the appellants were "guilty of misconduct, wilful and deliberate" and a conflict of interest; and finally, the appellants were not proper parties since they had assigned their interests to their "nominee" Dobson Livestock Corporation.

The case remained inactive for three months until appellees filed their motion for summary judgment. The motion was not supported by affidavits, consequently, the only factual material before the court consisted only of the pleadings and the exclusive listing agreement and the escrow instructions attached to the complaint.

Appellees' motion for summary judgment listed seven "Issues Involved" which, except for paragraph F., really have nothing to do with the contract relationship between the appellants and the appellees. Appellees' characterization of the "Issues Involved" read as follows:

"A. The title to the real property at the death of the owner descends to the heirs. They are the ones, and the only ones, who could execute an exclusive listing.

B. The law of this jurisdiction requires that a sale of real property in an estate be confirmed by an order of the Court. This being true, an exclusive broker's listing likewise would have to be ordered and approved by the Court.

C. Since there is no statutory power given in Arizona whereby a personal representative can enter into a brokers agreement, then both parties are charged with the knowledge that such a listing agreement is void, of no value and effect, and utterly against public policy.

D. A brokerage listing is an executory contract and not one coupled with an interest and can always be revoked.

E. In order for a broker to earn his commission, he must secure a buyer.

F. The so called exclusive listing was nothing more than the employment of an agent. *His authority as agent was revoked and the contract at an end when he attempted to become the purchaser of the property.*

G. The so called exclusive listing was prepared by the broker on his form and all doubts must be resolved against him."

(Emphasis supplied).

Paragraph F continues several of the appellees' affirmative defenses relating to the legal effect of the execution of the escrow instructions, by the appellant Thuerauf as buyer on his behalf, or on his "nominee's" behalf, or the exclusive listing agreement. Obviously, if this act discharged the exclusive listing agreement as a matter of law, summary judgment was properly granted.

At this point we must turn to appellants' response and cross-motion for summary judgment. Their response and cross-motion was supported initially by one affidavit of appellant Bernard J. Thuerauf. This was later supplemented by a second affidavit. The second affidavit by Thuerauf states in effect, that he and appellees executed the escrow instructions, pursuant to an oral agreement between them, as a device for obtaining a purchaser for the probate confirmation sale who would bid the appraised price of the real property at the sale. He states also that it was agreed between them that if he was successful in finding such a purchaser that his $40,000 commission for the sale would be his whether or not his designated purchaser was the ultimate purchaser at the sale. In addition, he states that he found the Dobson Livestock Company and after consulting with the appellees and obtaining their consent designated Dobson as his "nominee" under the escrow instructions. Finally, he states that although Dobson was not the high bidder at the probate court confirmation sale that he had performed his part of their agreement and was entitled to his commission. Appellees did not respond to this cross-motion and filed no counter-affidavits. This then is the state of the record on appeal.

■ In our opinion this record creates genuine issues as to material facts. Several that come immediately to mind are the following: what were the terms of the oral agreement between the parties which led up to the execution of escrow instructions? (It should be noted that such evidence is not barred by the parol evidence rule where its purpose is to explain the intention of the parties and their reasons for the escrow instructions and is not offered to vary the terms of such escrow instructions. *See* M. Udall, Arizona Law of Evidence, § 157 (1960)); did the appellees, as the principals, authorize and approve their agents' (appellants) sales activity which culminated in the escrow instructions; *see* Arizona Real Estate Dept. v. Arizona Land Title & Trust Co., 9 Ariz.App. 54, 59 (note 14), 449 P.2d 71, 76 (1969), 14 Ariz.App. 509, 484 P.2d 662 (1971); did they, in effect, guarantee his commission regardless of who purchased the real property at the sale; if a contract did exist between the parties was it discharged by some act or action by the appellants or appellees? The resolution of these fact questions should resolve this matter.

Obviously, in arriving at our conclusion we have taken, as we must, the affidavits in the light most favorable to the appellants' position, Ong Hing v. Arizona Harness Raceway, Inc., 10 Ariz.App. 380, 459 P.2d 107 (1969). It is not our intention by this opinion to limit the trial court in disposing of this matter in the future by summary judgment in the event that the fact issues are eliminated. All we are saying here is that the summary judgment granted in this matter was premature at the time it was granted since, as we have shown, genuine issues of material facts existed. *See* Ohlinger Industries, Inc. v. Anderson, 20 Ariz.App. 295, 512 P.2d 599 (filed July 24, 1973).

Finally, appellants ask for judgment against the appellees for their failure to oppose appellees' second affidavit. While we consider their affidavit sufficient for the purpose of establishing genuine issues of material facts, we are not of the opinion that it demonstrates that appellants are entitled to such judgment as a matter of law because it was not complete or detailed enough.

For the foregoing reasons the summary judgment is reversed and the matter returned to the trial court for further proceedings.

JACOBSON, Chief Judge, Division 1, and HAIRE, J., concur.