NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

FRANK TUNE, et al., *Plaintiffs/Appellants*,

*v.*

DONOR NETWORK OF ARIZONA, *Defendant/Appellee*.

No. 1 CA-CV 19-0336
FILED 9-22-2020

Appeal from the Superior Court in Maricopa County
No. CV2017-052835
The Honorable Theodore Campagnolo, Judge

**AFFIRMED**

COUNSEL

Sloma Law Group, Phoenix
By Melinda M. Sloma
*Co-Counsel for Plaintiffs/Appellants*

Amar Esq. PLLC, Scottsdale
By Ariel D. Amar
*Co-Counsel for Plaintiffs/Appellants*

Lewis Roca Rothgerber Christie LLP, Phoenix
By Foster Robberson, Justin Henderson, Laura Pasqualone
*Counsel for Defendant/Appellee*

## MEMORANDUM DECISION

Judge D. Steven Williams delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Jennifer M. Perkins joined.

**W I L L I A M S**, Judge:

**¶1** Frank and Diane Tune (the "Tunes")[1] appeal the superior court's grant of summary judgment and dismissal in favor of Donor Network of Arizona ("DNA"). For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

**¶2** On July 20, 2016, Christopher Tune ("Christopher"), an adult, was involved in a motorcycle accident. He was transported to the Maricopa Medical Center ("hospital"), where he died shortly thereafter. Although Christopher never consented to organ donation, his name was on the DonateLifeAZ Registry list of registered organ donors.

**¶3** Shortly after Christopher's death, Kenneth King ("Nurse King"), a registered nurse from the hospital, contacted DNA—the federally designated organ procurement organization ("OPO")—for Arizona, and also an eye and tissue recovery organization. DNA searched for and located Christopher in the DonateLifeAZ Registry, a registry DNA was required to establish and one they regularly relied upon. After locating Christopher in the registry, DNA called Christopher's family to determine if Christopher had any medical conditions that would complicate organ donation. During this and subsequent phone calls, DNA spoke to members of Christopher's family who expressed doubt about Christopher's donor status. Shortly after midnight on July 21, approximately 15 hours after Christopher died, DNA procured Christopher's corneas (corneal tissue must generally be recovered within 24 hours of the donor's demise or the tissue cannot be transplanted). Later that morning, DNA reached out to the Arizona Motor Vehicle Division ("MVD") to confirm Christopher's donor status. MVD responded

---

[1] Because Appellants have the same last name as their son, to avoid confusion, respectfully, we refer to Appellants by their last name and decedent by his first name.

and informed DNA that Christopher was not an organ donor. DNA returned Christopher's corneas in time for him to be cremated with them.

¶4            In March 2017, the Tunes—Christopher's parents—filed a complaint against DNA alleging eight claims related to the removal of Christopher's corneas. The following month, DNA filed a motion to dismiss seven of the eight counts. In May 2017, the Tunes amended their complaint, abandoning three previously pled claims and adding one additional claim. The amended complaint alleged: negligence ("Count One"), negligence per se ("Count Two"), intentional infliction of emotional distress ("Count Three"), negligent infliction of emotional distress ("Count Four"), tortious interference with a dead body ("Count Five"), and violation of A.R.S. § 32-1364 ("Count Six"). DNA filed a second motion to dismiss the newly pled Count Six.

¶5            Following oral argument in August 2017, the superior court granted DNA's first motion to dismiss (Counts One, Two, Four, and Five), as well as DNA's second motion to dismiss (Count Six). As a result, only Count Three, intentional infliction of emotional distress, remained. In April 2018, DNA filed a motion for summary judgment on the remaining count. Following oral argument in November 2018, the court granted DNA's motion, eliminating the Tunes' last viable claim. The court then entered final judgment in DNA's favor. After the court denied their motion for new trial, the Tunes timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. § 12-2101(A).

## DISCUSSION

¶6            The Arizona Revised Uniform Anatomical Gift Act, A.R.S. §§ 36-841 through 36-864 ("RUAGA"), which governs OPOs in Arizona, contains a presumption of good faith immunity in § 36-856(A):

> A person is not subject to civil liability, criminal prosecution or administrative proceedings for good faith acts or omissions related to procurement of parts in compliance with this article. All acts and omissions are presumed to be in good faith unless the acts or omissions are done with intent to maliciously cause injury.

¶7            The interpretation and application of RUAGA, and specifically § 36-856(A), form the basis for the Tunes' claims.

*I.      Motion to Dismiss*

**¶8**          The Tunes contend the superior court improperly granted DNA's motion to dismiss Counts One, Two, Four, and Five.[2] We review the dismissal of a complaint under Arizona Rule of Civil Procedure 12(b)(6) *de novo. See Coleman v. City of Mesa*, 230 Ariz. 352, 355, ¶ 7 (2012). When considering a motion to dismiss we "look only to the pleading itself and consider the well-pled factual allegations contained therein." *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7 (2008). We "assume the truth of the well-pled factual allegations and indulge all reasonable inferences therefrom." *Id.* However, "mere conclusory statements are insufficient to state a claim upon which relief can be granted," and "a complaint that states only legal conclusions, without any supporting factual allegations, does not satisfy Arizona's notice pleading standard." *Id.*

     *A.      Negligence Counts*

**¶9**          The superior court relied upon *Ramirez v. Health Partners of S. Ariz.*, 193 Ariz. 325 (App. 1998) in dismissing the Tunes' claims of negligence, negligence per se, and negligent infliction of emotional distress (Counts One, Two, and Four).

**¶10**          In *Ramirez*, an employee of a donor referral agency approached the plaintiffs, the donor's parents, about consenting to procurement of their deceased daughter's organs. *Id.* at 327, ¶ 2. The parents consented to procurement of limited organs and tissues. *Id.* The employee miscommunicated the scope of consent to the procurement organization, causing the procurement to go beyond the parents' consent. *Id.* at 329, ¶ 12. The parents alleged several causes of action, including two negligence claims: gross medical negligence and negligent infliction of emotional distress. *Id.* at 328, ¶ 5.

**¶11**          This court explained that allegations of negligence alone are insufficient to overcome the presumption of good faith set forth in the RUAGA. *See id.* at 330, ¶ 19. This court further noted that § 36-856(A) makes clear the presumption of good faith applies "unless the acts or omissions are done with intent to maliciously cause injury." *Id.* at 330, ¶ 15. Thus, although a miscommunication led to procurement beyond the scope of consent, the plaintiffs offered no evidence rebutting the statutory presumption of good faith, and so this court concluded the defendants were entitled to summary judgment on the negligence claims. *Id.* at 330, ¶ 19.

---

[2] The Tunes do not appeal the superior court's dismissal of Count Six.

¶12        The Tunes argue *Ramirez* is inapplicable because "*Ramirez* addresses and resolves issues relating to when an OPO acts in compliance with the RUAGA [and is therefore] entitled to good faith immunity," while the present case "addresses the consequences of when an OPO ignores the mandatory provisions of the RUAGA and whether it should still be entitled to good faith immunity." The Tunes further argue that, in *Ramirez*, the defendant "acted in compliance with the mandated provisions of the RUAGA." However, this argument misstates *Ramirez*. Although the Tunes are correct that the OPO in *Ramirez* complied with the RUAGA, the OPO was not the defendant. *See id.* at 327, ¶ 5. Rather, the defendant that allegedly failed to comply with RUAGA was the donor referral agency. *See id.* at 326, ¶ 1. And, although the precise roles of the organizations differ, both *Ramirez* and the present case address acts by organizations that allegedly violated the RUAGA.[3] *See id.* at 329, ¶ 12.

¶13        In *Ramirez*, this court noted:

> Most claims alleging unauthorized harvesting of body parts for which no valid consent had been given necessarily will arise from acts or omissions that deviate from the Act's terms in some respect. To accept plaintiffs' contention that statutory immunity is automatically unavailable in such cases would completely dilute, if not altogether eliminate, the good faith defense. Such a result appears contrary to the clear legislative intent and, therefore, we reject it.

*Id.* at 329, ¶ 13 (*citing Perry v. St. Francis Hosp. & Medical Center*, 886 F. Supp. 1551, 1557 (D. Kan. 1995)). The Tunes rely upon *Perry*, in which the plaintiffs alleged hospital staff knowingly or recklessly misled family members of a donor to obtain the family's permission for donation. *See Perry*, 866 F. Supp. 1551. But even *Perry*, which interprets a Kansas good faith immunity provision, concluded that more than noncompliance is required to defeat the statutory immunity. *See Perry*, 886 F. Supp. at 1557 (requiring that "the challenged actions violate or exceed the terms of [the Uniform Anatomical Gift Act] ***and*** are taken without a good faith effort to comply with [the Uniform Anatomical Gift Act]" to invalidate statutory immunity) (emphasis added). Notably, the Kansas statute does not include a presumption of good faith. *Id.* As noted, *supra* ¶ 11, absent evidence that "the acts or omissions [were] done with intent to maliciously cause injury,"

---

[3] *Ramirez* interpreted the 1987 version of RUAGA, which contained a nearly identical presumption of good faith immunity.

in Arizona there remains a presumption that DNA acted in good faith. *Ramirez*, 193 Ariz. at 330, ¶ 15.

**¶14** Although the Tunes contend that DNA acted maliciously, they have failed to plead facts sufficient to overcome the presumption of good faith. *See* § 36-856(A). The Tunes made conclusory statements in their first amended complaint alleging DNA failed to act in good faith, but these were merely legal conclusions not supported with well-pled facts and insufficient to satisfy Arizona's notice pleading standard. *See Cullen*, 218 Ariz. at 419, ¶ 7; *see also Jeter v. Mayo Clinic Ariz.*, 211 Ariz. 386, 389, ¶ 4 (App. 2005) ("[W]e do not accept as true allegations consisting of conclusions of law, inferences or deductions that are not necessarily implied by well-pleaded facts, unreasonable inferences or unsupported conclusions from such facts, or legal conclusions alleged as facts."). Likewise, the Tunes inclusion of the words "willfully" and "recklessly" in their complaint, without well-pled facts to support them, are insufficient to defeat a motion to dismiss. *See Cullen*, 218 Ariz. at 419, ¶ 7. On this record, the superior court appropriately dismissed the Tunes' claims of negligence, negligence per se, and negligent infliction of emotional distress.

### B. *Constitutionality of RUAGA*

**¶15** The Tunes also contend, for the first time on appeal, that if *Ramirez* applies we should find that its holding requires an interpretation of RUAGA that violates the anti-abrogation clause of the Arizona Constitution. *See* Ariz. Const. art. 18, § 6. Issues argued for the first time on appeal are generally waived. *See Barrio v. San Manuel Div. Hosp. for Magma Copper Co.*, 143 Ariz. 101, 104 (1984). Regardless, this court previously examined RUAGA through the lens of the anti-abrogation clause, noting that "Arizona courts have not recognized a common law action for negligence in the organ donation context," and concluding, "because [RUAGA] does not abrogate any viable 'right of action to recover damages,' it does not violate article 18, § 6." *Ramirez*, 193 at 334-35, ¶ 32. The Tunes' argument fails.

### C. *Tortious Interference with a Dead Body*

**¶16** The Tunes also rely upon the Restatement (Second) of Torts § 868 (1979) (Count Five) and argue the court erred by dismissing their claim for tortious interference with a dead body.

**¶17** As this court previously explained, "although Arizona courts usually follow the Restatement of the Law 'if there is no statute or case law on a particular subject,'" *Ramirez*, 193 Ariz. at 332, ¶ 26 (*quoting Martinez v.*

*Woodmar IV Condominiums Homeowners Ass'n*, 189 Ariz. 206, 208 (1997)), "[o]ur supreme court has cautioned against [] following the Restatement in lock step fashion 'when to do so would result in the recognition of a new cause of action in this jurisdiction,'" *id.* (*quoting Reed v. Real Detective Pub. Co.*, 63 Ariz. 294, 303 (1945)). Because our legislature "has seen fit to immunize those persons who participate in the organ procurement process from liability for good faith acts or omissions," *id.*, and because it does not appear any Arizona court has recognized a claim under § 868 in the organ donor context, the superior court properly dismissed the Tunes' claim of tortious interference with a dead body.

## II.    *Motion for Summary Judgment*

**¶18**        The Tunes contend the court erred in granting summary judgment on their final existing claim of intentional infliction of emotional distress (Count Three), arguing questions of fact remained. They do not assert that sufficient evidence exists to succeed on their claim of intentional infliction of emotional distress. Instead, they maintain that DNA is not entitled to good faith immunity because material issues of fact exist which establish DNA's failure to comply with RUAGA and demonstrate malicious intent. We address only those issues specifically raised by the Tunes. *See Boswell v. Fintelmann*, 242 Ariz. 52, 54, ¶ 7 n.3 (App. 2017) (failure to develop and support conclusory arguments waives appellate review).

**¶19**        We review the court's grant of summary judgment *de novo*, "viewing the evidence and reasonable inferences in the light most favorable to the party opposing the motion." *Ochser v. Funk*, 228 Ariz. 365, 369, ¶ 11 (2011). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). The moving party bears the burden of showing no genuine issue of fact exists. *Schwab v. Ames Const.*, 207 Ariz. 56, 60, ¶ 15 (App. 2004). The non-moving party "may not rely merely on allegations or denials of its own pleading," but rather must "set forth specific facts showing a genuine issue for trial." Ariz. R. Civ. P. 56(e).

**¶20**        In its grant of summary judgment, the superior court indicated the Tunes failed to provide evidence of any material fact refuting the presumption of good faith in § 36-856(A), and therefore could not prevail on their intentional infliction of emotional distress claim. And, although good faith is generally a question of fact, the good faith immunity defense is often applied as a matter of law. *See, e.g., Ramirez*, 193 at 329, ¶ 15 (citing *Lyon v. United States*, 843 F. Supp. 531 (D. Minn. 1994); *Kelly-Nevils v. Detroit Receiving Hosp.*, 207 Mich. App. 410 (1994); *Nicoletta v.*

*Rochester Eye & Human Part Bank*, 519 N.Y.S.2d 928 (Sup. Ct. 1987); *Brown v. Del. Valley Transplant Program*, 420 Pa. Super. 84 (1992)).

¶21 Nevertheless, the Tunes maintain that material issues of fact exist regarding whether Christopher was in the DonateLifeAZ Registry, and whether DNA intentionally failed to comply with RUAGA, which the Tunes argue would establish lack of good faith and malicious intent. But the undisputed evidence supports the superior court's finding that Christopher's name was, in fact, in the registry. An employee of the company that maintains the DonateLifeAZ Registry on DNA's behalf testified at deposition that Christopher's name was in the registry before his death. DNA employee Christina Nopar also indicated in a hospital note and at her deposition that she located Christopher in the registry.

¶22 The Tunes contend a hospital note entered by Nurse King, which indicates that DNA told him Christopher was not a donor, creates an issue of material fact as to whether Christopher was in the registry. However, at the time Nurse King recorded the note, the hospital staff did not know Christopher's identity and would have had no way of confirming with DNA whether Christopher was a donor or on a donor list. And, although Nurse King confirmed the validity of the note in an initial affidavit, he retracted his statement in a subsequent affidavit and at his deposition. Specifically, Nurse King explained at his deposition that he "ha[d] no reason to believe" Christopher was not in the registry, and indicated his note entry was quite possibly a mistake. An affidavit conflicting with subsequent deposition testimony is insufficient to establish an issue of material fact. *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990). That is because when a witness' deposition testimony contradicts his prior affidavit, the deposition testimony is generally deemed to be more trustworthy. *See Ariz. Real Estate Dep't v. Ariz. Land Title & Tr. Co.*, 14 Ariz. App. 509, 511 (1971). Consequently, Nurse King's hospital note, which he effectively retracted in his deposition testimony, does not create a material issue of fact.

¶23 The court also did not, as the Tunes claim, engage in improper weighing of the evidence regarding Christopher's inclusion in the registry. The Tunes point to two statements in the superior court's summary judgment order indicating the evidence "likely" pointed to a mistake by MVD in uploading Christopher's name to the registry. Although it is true the court was required to view "[all] reasonable inferences" in the Tunes' favor when deciding the summary judgment motion, *Ochser*, 228 Ariz. at 369, ¶ 11, "the trial judge must evaluate the evidence to some extent in ruling on a motion for summary judgment." *Orme Sch.*, 166 Ariz. at 309.

Here, the only reasonable inference to be made based upon the evidence presented was that MVD mistakenly included Christopher in the registry. In making this finding, the court did no more than make a permissible evaluation of the evidence. Indeed, the court later made a definite statement, resolving any doubt, indicating "[d]efendant, through its expert, presented reliable and *undisputed* evidence that MVD had uploaded Christopher's name to the [r]egistry as an organ donor." (Emphasis added.) And, although the Tunes contend that DNA engaged in "deliberate ignorance" and should have investigated further once the family relayed their belief that Christopher was not an organ donor (and mistakenly placed on the registry), they fail to identify material evidence in dispute or legal precedent persuasive to their plight.

¶24       Finally, the Tunes contend that whether DNA acted with malicious intent is a question of fact for the jury. We generally agree with this sentiment. However, when no reasonable jury could find intent based upon the evidence, summary judgment is proper. *See Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 201 Ariz. 474, 499 (2002) (as amended). As discussed, *supra* ¶¶ 13-14, noncompliance with the RUAGA alone is insufficient to establish lack of good faith. *See Ramirez*, 193 Ariz. at 329, ¶ 13. Alleged RUAGA violations, without more, do not create an issue of material fact sufficient to rebut the presumption of good faith.

¶25       The Tunes contend the superior court ignored evidence of DNA's malicious intent and motivation by highlighting that DNA sometimes profits from sending harvested corneas overseas to organizations in other countries. How this fact establishes malicious intent, however, is not clear. Despite the Tunes' assertion to the contrary, this does not create a material issue of fact regarding intent. *See Shaw v. Petersen*, 169 Ariz. 559, 560–61 (App. 1991) ("Motions for summary judgment should not be denied 'simply on the speculation that some slight doubt . . . , some scintilla of evidence, or some dispute over irrelevant or immaterial facts might blossom into a real controversy in the midst of trial.'") (quoting *Orme Sch.*, 166 Ariz. at 311).

¶26       Because no issue of material fact exists, and because the Tunes have failed to offer any evidence demonstrating DNA acted with "malicious intent," the court did not err in granting summary judgment in favor of DNA.

## CONCLUSION

**¶27**　　　For the foregoing reasons, we affirm. We deny the Tunes' request for attorneys' fees under § 12-341.01. As the successful party on appeal, DNA is entitled to costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:　　AA